STATE of Minnesota, Respondent,

v.

Willard Russell MOSS, Appellant.

No. 47689.

Supreme Court of Minnesota.

July 14, 1978.

C. Paul Jones, Public Defender, Robert Oliphant, Sp. Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, David W. Larson, and Lee W. Barry, Asst. County Attys., Minneapolis, for respondent.

PER CURIAM.

Defendant was found guilty by a district court jury of aggravated robbery, Minn.St. 609.245, and was sentenced by the trial court to a maximum term of 15 years in prison. On this appeal from judgment of conviction, defendant contends (1) that his conviction should be reversed because the trial judge had unsuccessfully prosecuted defendant for second-degree murder 8 years earlier when he was a prosecuting attorney, and (2) that there was, as a matter of law, insufficient evidence to support the guilty verdict. We affirm.

Because of the large number of street robberies in the vicinity of Grant Street and Nicollet Avenue in Minneapolis, the police

department occasionally assigns officers to act as decoys in the area—in other words, to try to attract the attention of people who are bent on robbery. Early on the morning of Wednesday, September 15, 1976, Lieutenant Welton Kopp was on duty in the area in such a capacity. He was wearing a suit, tie, topcoat, and eyeglasses, but he intentionally made himself appear disheveled and acted intoxicated. Supporting Kopp were three fellow officers, whose jobs were to maintain visual surveillance of Kopp and to assist him when and if he needed help.

At about 1:00 a. m., two male homosexual prostitutes, defendant and a man named Frederick Wilson, approached Kopp and propositioned him, but Kopp refused their offer and told them that he was simply looking for his car. Defendant and Wilson then walked toward some cars and asked if his car was over there. Kopp said it was not and that he had already looked there. Kopp retreated when the men approached him again, and they asked him if he was afraid. Kopp said he was, and defendant, opening his purse to show Kopp, said, "There's nothing to be afraid of, we don't have any guns or anything like that." Kopp, after glancing in the purse and not seeing any weapons, said: "Well, I've been robbed before and I'm nervous, I'm afraid. I don't want to be robbed again." Defendant and Wilson again propositioned Kopp, who again refused their offer.

The two then walked into a private alley, talked to each other, and then called: "There's a car parked in here. Is that yours?" Kopp testified that when he walked into the alley he saw a glinting object in defendant's hand which he believed was a knife, although he was not sure. On seeing this, Kopp said that the car was not his and turned to leave the alley. Defendant and Wilson then approached Kopp, and he told them to "get away." As they moved in, Kopp held out the roll of money, at the same time saying, "Leave my money alone." Wilson hit Kopp in the head with his purse, and defendant grabbed the hand with the money and attempted to bite the hand and to twist his arm in order to get Kopp to drop the money. Kopp testified that he then released the money, and, as defendant and Wilson ran away in different directions, he shouted that he had been robbed. He admitted that he did not see a knife during the scuffle but claimed that as defendant ran he was "doing something" with his purse. Moments later the surveillance officers arrested both defendant and Wilson. The officers searched defendant's purse and found a large pair of scissors which they seized.

Although Kopp testified that he sustained minor injuries in the scuffle (a slight cut on the bridge of his nose and a skinned left knee), the prosecutor in his closing argument did not mention this or suggest that the jury should or could find defendant guilty of aggravated robbery by finding that he inflicted bodily harm. Rather, he argued that the only difference between aggravated robbery and the lesser-included offense of simple robbery was that the use of a dangerous weapon was necessary in order to commit aggravated robbery. Specifically, he said:

> " * * * [T]he Judge will submit to you a verdict form where you can find the defendant not guilty, guilty of Aggravated Robbery, guilty of Simple Robbery, or guilty of Theft from Person. Now, the difference between Simple Robbery and Aggravated Robbery is essentially this: In an Aggravated Robbery, the State must show that a dangerous weapon was used, and in this case it would be a scissors. If the State doesn't show that and you find a robbery occurred, in other words, if you find that this defendant used or threatened to use force in taking that money, then that's a robbery and you must return a verdict of guilty of Robbery. That is a lesser included of the Aggravated Robbery * * . Just remember this: Simple Robbery, no dangerous weapon, and Aggravated Robbery, a dangerous weapon.
>
> "Now, the third lesser included here is a Theft from Person. This is altogether different from Robbery in the sense that the Theft from Person means there was

no threat or no use of force, rather there was just a taking. So to find an Aggravated Robbery, you must find that there was a threat or use of force and a dangerous weapon; Simple Robbery, a threat and use of force but no dangerous weapons; Theft from Person, just a taking, no threat or use of force. Also, the taking in all these cases must be from the person."

The defense argued the case similarly to the jury.

The trial court charged the jury on aggravated robbery, simple robbery, and theft, basically reading the statutes on each offense. The jury was told that if it found that defendant had committed aggravated robbery it should then answer the question whether "[i]n committing the offense, did the defendant, Willard Russell Moss, personally use a dangerous weapon; to-wit, a scissors?"

After deliberating for a number of hours, the jury asked the court with respect to aggravated robbery whether the weapon had to be used or could the assumed presence of the weapon constitute aggravated robbery. The court answered this by simply rereading the instruction it previously had given on aggravated robbery. Specifically, the court read the statute relating to aggravated robbery and the statutory definition of "dangerous weapon." One juror then asked whether "armed" meant within the hand or elsewhere on the person. The court said that it could not answer this except by reading the statute.

Less than an hour later the jury found defendant guilty of aggravated robbery, at the same time finding that he had not personally used the scissors.

1. Defendant's first contention is that he should be granted a new trial because in 1968 the trial judge, at that time a prosecuting attorney, unsuccessfully prosecuted him for second-degree murder.

There is nothing in the record to indicate that this issue was ever raised below. In fact, the trial judge had conducted both the omnibus hearing in this case as well as a prior trial on the same charge, which ended in a mistrial because the jury could not reach a verdict. Defendant at no time filed an affidavit of prejudice pursuant to Minn.St. 542.16.[1] If he had done so, he could have compelled the selection of a different judge.[2] There is no indication in the record whether defendant remembered that the trial judge had prosecuted him nor is there any explanation as to why an affidavit of prejudice was not filed. Also, there is nothing to indicate whether the judge remembered prosecuting defendant. Defendant admits that there is nothing in the record to suggest that he did not receive a fair trial but rather seems to contend that if in fact the trial judge remembered prosecuting him there is a possibility that that fact might have affected the trial judge's exercise of discretion in the matter of sentencing.

■ The central fact in our case is that defendant had an absolute right to disqualify the trial judge in this case pursuant to

1. Minn.St. 542.16 provides as follows: "Any party, or his attorney, to a cause pending in a district court, on or before ten days prior to the first day of a general, or five days prior to a special, term thereof, or, in any district having two or more judges, within one day after it is ascertained which judge is to preside at the trial or hearing thereof, or at the hearing of any motion, order to show cause, or argument on demurrer, may make and file with the clerk of the court in which the action is pending and serve on the opposite party an affidavit stating that, on account of prejudice or bias on the part of such judge, he has good reason to believe, and does believe, that he cannot have a fair trial or hearing thereof, and thereupon such judge shall forthwith, without any further act or proof, secure some other judge of the

same or another district to preside at the trial of such cause or the hearing of the motion, demurrer, or order to show cause, and shall continue the cause on the calendar, until such judge can be present. In criminal actions such affidavit shall be made and filed with such clerk by the defendant, or his attorney, not less than two days before the expiration of the time allowed him by law to prepare for trial and in any of such cases such presiding judge shall be incapacitated to try such cause. In criminal cases, such judge, for the purpose of securing a speedy trial, may in his discretion change the place of trial to another county."

2. Defendant then could have had the replacement judge stricken for cause only.

§ 542.16, and yet did not exercise that right. Instead, he submitted to an omnibus hearing, two trials, and sentencing before ever raising the issue. In such a situation, we would not reverse the judgment unless defendant were able to show actual bias and not just the appearance of bias. Here the record not only does not show actual bias or the appearance of bias, but it does not even show that the trial judge remembered prosecuting defendant.

2. The second issue relates to whether there was, as a matter of law, insufficient evidence to support a guilty verdict.

Section 609.245 provides:

"Whoever, while committing a robbery, is armed with a dangerous weapon or inflicts bodily harm upon another is guilty of aggravated robbery and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $20,000, or both."

In his brief on appeal, defendant argues first that in finding him guilty of aggravated robbery the jury did not consider the matter of bodily harm at all and found that defendant had not personally used the weapon. Defendant then argues that the judgment must be reversed because a defendant cannot be convicted of robbery with a dangerous weapon unless he actually uses the weapon in committing the robbery.

The state in its brief counters this latter argument by citing the wording of the aggravated robbery statute. The state argues that because of the wording of the statute the test is not whether the weapon was used but rather whether the person has the weapon on his person available for use. The state also argues that, in any event, there was evidence of infliction of bodily harm and that the jury's verdict can be sustained on that ground.

In his reply brief, defendant refines this argument somewhat, arguing that under the statutory definition of "dangerous weapon"[3] the scissors could not be deemed a dangerous weapon unless they actually were used as such. Since the jury specifically found that defendant had not used the scissors in the robbery, the scissors were not a dangerous weapon under this test.

We agree with defendant's initial contention that from the way the trial was conducted and argued and from the jurors' questions to the court it would be unjustified to assume that the jury based its verdict on a finding of infliction of bodily harm. This is not to say that the verdict could not have been based on a finding of bodily harm. Minn.St. 609.02, subd. 7, defines "bodily harm" as "physical pain or injury, illness, or any impairment of physical condition." Arguably, that was shown here. *State v. Johnson,* 277 Minn. 230, 152 N.W.2d 768 (1967), certiorari denied, 390 U.S. 990, 88 S.Ct. 1190, 19 L.Ed.2d 1297 (1968). Thus, because of the way this case was presented to the jury, we have to assume that the jury based its verdict on a finding that defendant was armed while he committed the robbery but that he did not actually use the weapon with which he was armed.

The question then becomes whether a person can be convicted of armed robbery if while committing the robbery he kept his "dangerous weapon" in his pocket and did not use it.

The definition of "dangerous weapon" in § 609.02, subd. 6 creates three categories: (1) firearms, loaded or unloaded; (2) devices designed as weapons and capable of producing death or great bodily harm; and (3) devices which, in the manner used or intended to be used, are calculated or likely to produce death or great bodily harm.

Reading § 609.02, subd. 6 in connection with the armed robbery portion of the aggravated robbery statute, § 609.245, we think it is clear that a defendant who has either the first or second type of weapon on his person during the robbery commits armed robbery whether or not he uses the weapon or intends to use it. A different standard applies when the defendant

---

**3.** Minn.St. 609.02, subd. 6, provides: " 'Dangerous weapon' means any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, or any device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm."

personally possesses at the time of the robbery an item which is not designed as a weapon but which, in the manner used or intended to be used, is calculated or likely to produce death or great bodily harm. Such a person should be deemed to have committed armed robbery if it can be shown that while committing the robbery he displayed or used the item as a weapon or intended to use it as such if its use became necessary.

In this case, there was sufficient evidence from which the jury could infer that although defendant did not use the scissors during the robbery he had them on his person and intended to use them if their use became necessary. Although the court possibly could have more clearly explained to the jury that it could find defendant guilty of armed robbery by finding either that he used the scissors or intended to use them as a weapon if their use became necessary, the court did read the statutory definition of "dangerous weapon" to the jury, and defense counsel did not request clearer instructions on the point. Under the circumstances, we must presume that the jury found defendant intended to use the scissors, as a weapon if the need arose.

Affirmed.