**STATE of Minnesota, Respondent,**

v.

**Daniel S. SCHLIENZ, Appellant.**

**No. A07–874.**

Supreme Court of Minnesota.

Nov. 5, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Timothy C. Scannell, Cook County Attorney, Grand Marais, MN, for respondent.

Richard Schmitz, Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

PAGE, Justice.

Appellant Daniel S. Schlienz was charged with criminal sexual conduct, false imprisonment, violation of a harassment/restraining order, and contributing to the delinquency of a minor for his alleged sexual involvement with two 15–year–old girls and one 17–year–old girl. On November 28, 2006, Schlienz entered an *Alford* plea [1] to two counts of criminal sexual conduct in the third degree related to his involvement with the two 15–year–olds and pleaded guilty to one count each of criminal sexual conduct in the fifth degree, violating a restraining order, and gross misdemeanor harassment involving conduct related to the 17–year–old. At a rescheduled sentencing hearing on February 6, 2007, Schlienz moved to withdraw his guilty pleas. The sentencing court denied Schlienz's motion, sentenced him to a stay of imposition, and ordered him to serve a year of probationary jail time. On appeal to the court of appeals, Schlienz argued, among other things, that he was entitled to have his motion to withdraw his guilty pleas heard by a different judge because the sentencing judge had abandoned his impartiality. The court of appeals concluded that, although the sentencing judge engaged in inappropriate ex parte communications with the prosecutor, any error in the judge's failure to recuse was harmless because the judge remained impartial and neutral. We granted Schlienz's petition for review limited to the question of whether the sentencing judge's ex parte communications with the prosecutor entitled Schlienz to make his motion to withdraw his guilty pleas before a different judge. For the reasons discussed below, we reverse the court of appeals and remand to the district court for further proceedings.

The facts relevant to this appeal are as follows. After Schlienz pleaded guilty, a sentencing hearing was scheduled for January 11, 2007. Before the scheduled sentencing hearing, the judge who took Schlienz's guilty pleas and was to preside at Schlienz's sentencing had two ex parte communications with the prosecutor. The first communication took place on the phone on January 10, 2007. The second communication took place in the judge's chambers on January 11, 2007, sometime before the scheduled sentencing hearing.

Only the second communication was recorded. During that communication, the judge initiated a discussion with the prosecutor about the possibility that Schlienz would move to withdraw his guilty pleas. A transcript of that communication includes the following statements by the judge:

> Uh, Court has asked Mr. Scannell, the prosecutor, to step into the room briefly, uh, and, uh, Court wanted to put some stuff on the record. I'll indicate—I'll—uh, gonna explain the same thing to Mr. Bottema and tell him that I spoke to you earlier.
>
> Uh, because it's not clear what's gonna happen this afternoon, uh—after, uh, the record can reflect, Mr. uh, Bottema, Mr. Scannell, and the Court visited yesterday, Court did review [s]ome of the case law on withdrawal of guilty pleas, and, uh, Court understands that case law to, uh, be, at least under some circumstances, um—the State, uh, in terms of, uh, prejudice—should a request be

---

1. *See North Carolina v. Alford,* 400 U.S. 25, 28, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (upholding acceptance of plea even though defendant maintained innocence); *State v.* *Goulette,* 258 N.W.2d 758, 760–61 (Minn. 1977) (following *Alford* in accepting plea without admission of guilt).

made, uh, State is entitled to be heard on whether or not it would be prejudicial to the State.

Some of the case law, as the Court read it, uh, includes one of the factors in terms of considering whether or not it's prejudicial to the State. *Um, victim-type issues in terms of, um, both the mechanics of getting victims lined up to testify, subpoenas, and those kinds of things, as well as, um, in cases, uh— well, there is one case that the Court recalls, was a criminal sexual conduct case where the emotional or psychological toll upon a victim who had geared up for trial and had been informed the trial was not gonna go, and, uh, then told they may have to gear themselves up again was one of the factors that the, uh, Court talked about in terms of, um, prejudice, uh, to the State in, uh, granting, or not granting the motion.*

I don't know if that's—if—if we're even gonna have the motion, um, and I don't know what the basis for it's gonna be, but as the Court understands the law, *one of the things I don't want us to get into, uh, or at least to—to be blind-sided,* is when I turn to the prosecutor, and ask, "Do you claim any prejudice," to say, "Gee, Judge I haven't thought about that." Wanted to put ya on notice, and I'll tell Mr. Bottema I put ya on notice, uh, when we get him here, and the other thing is specifically, uh, *I want to be able to, uh, inquire of you at least a little bit about the—the attitude, uh, of, uh, the victims in terms of, uh, allowing a withdrawal.*

Now I don't think it applies in all cases, but I think it's, uh, at this point unclear, and because we left it on— because we got a—I guess a number of folks who have kind of geared up, uh, in anticipation that this is gonna occur this afternoon—uh, I don't want to talk about the merits of it with you this morning, Mr. Scannell. I'll certainly try to answer any questions about what I'm saying, but I—*I wanna, uh, indicate I'm gonna ask you on the record about prejudice generally,* uh, if the State claims any or doesn't claim any, uh, and, uh, if, uh—or what the attitude of the victims, uh, and the mechanics of reassembling, uh, the victims may be.

(Emphasis added.)

The sentencing hearing, scheduled for later that day, was postponed at Schlienz's request and rescheduled to February 6, 2007. Schlienz subsequently filed a motion to withdraw his guilty pleas. That motion was taken up at the rescheduled sentencing hearing. At that hearing, Schlienz argued that the court should grant his motion to withdraw because his defense counsel did not properly advise him and because he was not amenable to in-patient treatment. The State opposed Schlienz's motion, arguing:

> Uh, in order to vacate your plea, you have to have a fair and just reason there for [sic], and there is no fair and just reason at this point. . . . [I]n addition to considering that issue of the fair and just reason, the Court is also obligated to consider, uh, any prejudice to the prosecution.
>
> In this case, I would say that the prosecution includes not only the county attorney's office and law enforcement, but also the victims and their family. And . . . the community as well.
>
> . . . .
>
> Um, that would be obviously time consuming and burdensome to the State. *It also would be, uh, burdensome and extremely unfair to the victims in this case. They have been through an emotional roller coaster.* Uh, they've demonstrated a great deal of, uh, bravery . . . in coming forward in the first case

in this particular matter, and to put them through that again simply because what we have here is Mr. Schlienz, uh, making a plea of his own accord for apparently pragmatic reasons on his own part, and then realizing that the rest of the world simply did not see things the way that he does—he now has buyer's remorse, doesn't like the way it's gonna turn out, asks to vacate his plea, it is totally inappropriate and—and would be unfair.

(Emphasis added.) The State also argued that defense counsel was not ineffective.

The court denied Schlienz's motion to withdraw, stating that, based on case law, "the kind of things that [the prosecutor] talks about in terms of the burden upon victims and—and persons close to victims, their families, once they gear up for a trial, and the trial goes away because of a plea, and the emotional, the psychological, going back, uh, up to gear up again" are things "that the Court can consider" when deciding if it would be fair and just to allow a defendant to withdraw a plea. Schlienz was sentenced to a stay of imposition and ordered to serve a year of probationary jail at a correctional facility.

On appeal to the court of appeals, one of Schlienz's arguments was that the sentencing judge abandoned his impartiality and should have recused from deciding Schlienz's guilty plea withdrawal motion. *State v. Schlienz*, No. A07–874, 2008 WL 2796581, *1 (Minn.App. July 22, 2008). The court of appeals concluded that the sentencing judge erred by engaging in inappropriate ex parte communications but found the error to be harmless. *Id.* at *2.

■ The question before us is whether Schlienz is entitled to have his motion to withdraw his guilty pleas heard by a judge other than the one who engaged in the ex parte communication with the prosecutor. The State contends that Schlienz's claim is waived because his defense counsel did not object to the ex parte communication or to the sentencing judge's alleged partiality at the time the motion to withdraw was heard. Schlienz argues that the presence of a judge that is not impartial constitutes structural error that cannot be waived. Here, we need not decide whether there was structural error or whether the error was waived because, even if we assume that the error was waived, the unobjected-to error may be reviewed for plain error. *State v. Ramey*, 721 N.W.2d 294, 297 (Minn.2006).[2]

2. After Schlienz submitted his appellate brief to our court, the State brought a motion in district court to supplement the record with affidavits from Schlienz's counsel and the prosecutor under Minn. R. Civ.App. P. 110.05. In those affidavits, the State sought to show that Schlienz's counsel was aware at the time of the sentencing hearing both that the ex parte communications had occurred and the substance of those communications, yet did not object to the judge hearing the withdrawal motion. Finding that the affidavits would be helpful to our court, and noting that Schlienz did not challenge their accuracy, the judge whose record is at issue here admitted the affidavits for the purpose of supplementing the record.

The affidavits go primarily to the question of whether Schlienz waived his right to appellate review of whether judicial recusal was required. Based on the affidavits, the State argues that Schlienz was aware of the ex parte communications at the time his motion to withdraw was heard and did not object to the judge hearing the motion. On that basis, the State argues that Schlienz waived his right to have the issue of whether recusal was required heard on appeal. Schlienz has moved to have the affidavits stricken as not properly before our court. Because the affidavits go to the question of whether Schlienz waived his right to appellate review of whether recusal was required and because we are reviewing the judge's failure to recuse for plain error, we need not decide whether the affidavits are properly before us. Minn. R.Crim. P. 31.02.

Under our plain error analysis, we apply a four-pronged test in which we first consider whether: (1) there was an error; (2) which was plain; and (3) which affected the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). If each of these prongs are satisfied, we then consider whether to address the error to ensure the fairness and integrity of the judicial proceedings. *Id.* An error is plain if it "contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302. An error affects substantial rights if it is "prejudicial and affect[s] the outcome of the case." *Griller*, 583 N.W.2d at 741.

Schlienz contends that the judge was disqualified from presiding over his plea-withdrawal motion because the judge engaged in an improper ex parte communication that compromised the judge's ability to be impartial. The State argues that it was not error for the judge to preside over Schlienz's motion because the judge's ex parte communication with the prosecutor was permitted by the Code of Judicial Conduct for administrative purposes. In making this argument, the State contends that the judge merely instructed the prosecutor to be prepared in advance for the plea-withdrawal motion so that the prosecutor would not have to request a continuance to prepare a response.

Minnesota Rule of Criminal Procedure 26.03, subd. 13(3), provides that "[n]o judge shall preside over a trial or other proceeding if that judge is disqualified under the Code of Judicial Conduct." Canon 3D(1) of the Code provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."[3] Canon 4F provides, " '[i]mpartiality' or 'impartial' denotes absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintaining an open mind in considering issues that may come before the judge."

"Canon 3D(1) is not purely aspirational," as indicated by use of the word "shall." *Powell v. Anderson*, 660 N.W.2d 107, 115 (Minn.2003). But its "grounds are stated broadly," and it cannot be applied uniformly in all circumstances. *Id.* "The mere fact that a party declares a judge partial does not in itself generate a reasonable question as to the judge's impartiality." *State v. Burrell (Burrell II)*, 743 N.W.2d 596, 602 (Minn.2008). "Likewise, the fact that a judge avows he is impartial does not in itself put his impartiality beyond reasonable question." *Id.* Instead, when a judge's decision not to disqualify himself or herself is challenged, we conduct "an objective examination of whether the judge's impartiality could reasonably be questioned." *Powell*, 660 N.W.2d at 116. However, we begin with the presumption that a judge has discharged his or her judicial duties properly. *McKenzie v. State*, 583 N.W.2d 744, 747 (Minn.1998).

A judge may, when circumstances require, engage in ex parte communications for scheduling or administrative purposes, or in an emergency. Minn.Code of Judicial Conduct Canon 3A(7)(a).[4] Here, it is

---

**3.** On July 1, 2009, the Code of Judicial Conduct was amended. The amendments apply to all conduct occurring on or after that date. References to the Code of Judicial Conduct in this opinion are to the version of the Code in effect at the time of Schlienz's plea and sentencing hearings.

**4.** Canon 3A(7)(a) reads:

A judge shall not initiate, permit or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding, except that:

undisputed that the judge initiated an ex parte communication with the prosecutor about a pending matter. But nothing in the record suggests that the communication was for scheduling or administrative purposes, or an emergency. Rather, the record indicates that during the ex parte communication the judge told the prosecutor to be prepared to respond to the anticipated plea-withdrawal motion and suggested specific arguments relating to prejudice to the victims of Schlienz's offenses. These suggestions went well beyond scheduling, administrative, or emergency matters and suggested substantive responses to be made to the anticipated motion. Therefore, we conclude that the ex parte communication was error.

■ The impropriety here is not just that the judge had an ex parte communication with the prosecutor. The substance of the communications is also problematic. A judge must maintain the integrity of the adversary system at all stages of the proceedings. *State v. Mims,* 306 Minn. 159, 168, 235 N.W.2d 381, 387 (1975). Therefore, a judge must be "fair to both sides" and "refrain from remarks which might injure either of the parties to the litigation." *Hansen v. St. Paul City Ry. Co.,* 231 Minn. 354, 360, 43 N.W.2d 260, 264 (1950). A judge "should not act as counsel for a party by raising objections which the party should make." *Id.* "To assume a partisan position is to desert the high position to which the judge is elevated, and assume the role of the advocate." *Id.* (quotation marks omitted). Here, the judge initiated a conversation with the prosecutor during which he suggested specific objections that the prosecutor could make to the anticipated plea-withdrawal motion. The nature of the communication

leads us to conclude that the communication, at a minimum, reasonably called the judge's impartiality into question. Because a judge is disqualified when his or her impartiality is reasonably called into question, the judge's failure to recuse in this case constituted error that was plain.

Having concluded that there was plain error, we turn to the question of whether the judge's failure to recuse himself from Schlienz's plea-withdrawal motion affected Schlienz's substantial rights. The substantial right at issue here is Schlienz's right to a fair hearing before an impartial tribunal with a decision maker who does not appear to favor one side. *See Pederson v. State,* 649 N.W.2d 161, 165 (Minn.2002) (noting the need for a judge to "avoid the appearance of impropriety" and to "act to assure that parties have no reason to think that their case is not being judged fairly"). As the United States Supreme Court noted in *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954), "justice must satisfy the appearance of justice."

Schlienz contends that the judge lost his impartiality by taking a position on Schlienz's plea-withdrawal motion during the communication and by suggesting to the prosecutor specific arguments to be made with respect to that motion. In making his argument, Schlienz relies on *State v. Dorsey,* 701 N.W.2d 238 (Minn. 2005). In *State v. Dorsey,* the trial judge openly questioned a factual assertion made by a key defense witness, independently investigated the fact, and reported the results of her investigation to counsel. 701 N.W.2d at 250–51. We concluded that in doing so the judge was not impartial, in part because she introduced "into the proceedings a material fact that was favorable

*(a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized.*

to the state—and which the state had not yet introduced." *Id.* at 251.

The State does not dispute that the judge suggested to the prosecutor what arguments to make. However, the State argues that *Dorsey* does not apply. Although this case is similar to *Dorsey* in that the judge in this case also identified specific arguments for the State to make that were helpful to the State and that the State had not yet made, the State nonetheless argues that the judge remained impartial and did not abandon his neutral role or predetermine the outcome of the plea-withdrawal motion. In support of this argument, the State relies on *McKenzie,* in which we concluded that judges may discuss cases amongst themselves. 583 N.W.2d at 748. *McKenzie* is not helpful to the State's argument here. In *McKenzie,* we distinguished communications between a judge and a party, which are not permissible, from those amongst judicial colleagues, which we held may be permissible. *Id.* Thus, even under *McKenzie,* the judge's communication in this case was impermissible.

In *Burrell II,* we recently addressed whether a judge was required to recuse himself from presiding over a bench trial based on communications the judge had with counsel for the State and the defendant as part of the litigation. 743 N.W.2d at 599–602. On direct appeal, we had reversed Burrell's first-degree murder conviction and remanded for a new trial. *State v. Burrell (Burrell I),* 697 N.W.2d 579, 605 (Minn.2005). Complying with our directive to admit expert gang testimony only if necessary and helpful, the judge made several rulings adverse to the State that excluded expert gang testimony. *Burrell II,* 743 N.W.2d at 598. The State argued that the judge's rulings precluded proof of certain elements of the for-the-benefit-of-a-gang offense with which Bur-

rell was charged. *Id.* at 599. As a result, the judge certified four questions to the court of appeals regarding the rulings, but the court of appeals dismissed the certified questions. *Id.* (citing *State v. Burrell,* No. A06–149, 2006 WL 2807166, at *5 (Minn. App. Oct. 3, 2006), *rev. denied* (Minn. Dec. 20, 2006)).

After the dismissal, the judge held a pretrial conference in his chambers that was attended by a newly assigned prosecutor for the State. *Burrell II,* 743 N.W.2d at 599. That conference was not on the record. *Id.* After the conference, the new prosecutor alleged that the judge informed him during the conference that the State could not prove "the case." *Id.* At a later hearing at which the defendant sought to waive his right to a jury trial, the prosecutor objected to the defendant being permitted to waive a trial by a jury and, alternatively, if waiver was permitted, to the judge remaining on the case. *Id.* The State argued that the judge would no longer be impartial because the judge had drawn conclusions about the merits of the State's case and that his knowledge of disputed facts made it improper for him to preside. *Id.* The judge did not recuse, responding that he had only instructed the prosecutor to consider the risks associated with pursuing the for-benefit-of-a-gang offense in light of earlier evidentiary rulings. *Id.* at 600. The State then made a motion to have the judge removed, which was denied by the chief judge of the district. *Id.* Concluding that the judge had not commented on the merits of the case and that his knowledge of the case did not preclude him from presiding over the bench trial, we held that recusal was not required. *Id.* at 602–03.

This case differs from *Burrell.* Here, the sentencing judge advised the prosecutor to prepare an objection to the expected plea-withdrawal motion, suggested that the

State argue prejudice, and provided specific arguments that would support a showing of prejudice, such as "victim-type issues," "the mechanics of getting victims lined up to testify, subpoenas," and "the emotional or psychological toll upon a victim." In making these statements, the judge used inclusive language referring to the State and the court as "us." Additionally, the judge's statements related to the merits of a potentially dispositive motion, raising the question of whether the judge could remain impartial.

Further, there is a clear difference between a judge expressing an opinion about the merits of an ongoing dispute with both parties present and a judge telling a party during an ex parte communication how to oppose the other party's expected motion. In *Burrell*, the judge expressed his opinion about a claim that had been hotly contested and heavily litigated during an in-chambers meeting with both the State and defense counsel present. The judge in *Burrell* did not introduce new arguments into the proceeding but rather reiterated the former prosecutor's conclusion that, based on the judge's rulings, it would be difficult to prove the for-the-benefit-of-a-gang claim. The communication here is different. The judge initiated an ex parte communication in which the judge instructed the State how to oppose Schlienz's expected motion. It is also worth pointing out that this is not a case of a judge questioning counsel during proceedings in order to clarify facts and aid in his decision making; rather, here, the judge suggested arguments that were helpful to the State that the State may not have considered and had not yet made.

On the record before us, it is not clear that the judge had not prejudged the merits of Schlienz's expected motion to withdraw his guilty plea or that he maintained an open mind when hearing Schlienz's motion once made. The judge's statements benefited the State by giving the State a roadmap for responding to the expected plea-withdrawal motion. It is impossible to know whether the State would have objected to the plea-withdrawal motion or would have argued prejudice in the way that it did absent the judge's communications with the prosecutor. Thus, we conclude that the judge's failure to recuse denied Schlienz the right to a fair hearing before an impartial decision maker.

Having concluded that the judge's failure to recuse was plain error that affected Schlienz's substantial rights, we next consider whether to correct the error to ensure the fairness and integrity of the judicial proceedings. We conclude that we must. The presence of an impartial judge is critical to ensure the fairness and integrity of the judicial process. There can be no fair proceeding, nor can the proceeding have any integrity, when the decision maker's impartiality has been reasonably called into question. Because the judge's conduct here reasonably calls into question the judge's ability to be impartial, we reverse the conviction and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.