*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1451**

State of Minnesota,
Respondent,

vs.

Mervel George Jones, III,
Appellant.

**Filed October 13, 2025
Affirmed
Cochran, Judge**

Mille Lacs County District Court
File No. 48-CR-22-211

Keith Ellison, Attorney General, Jacob Campion, Assistant Attorney General, St. Paul, Minnesota; and

Corey Haller, Mille Lacs County Attorney, Milaca, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rebecca Ireland, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Smith, Tracy M., Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

Appellant challenges his convictions of first-degree assault and fleeing a peace officer following a jury trial. Appellant argues that he is entitled to a new trial because the district court judge violated his constitutional right to an impartial fact-finder when

conducting its inquiry as to whether appellant forfeited his right to be present at trial after appellant failed to appear. Alternatively, appellant argues that he is entitled to a new trial because the district court judge violated the code of judicial conduct by creating an appearance of bias when discussing a hearsay objection with counsel. We affirm.

**FACTS**

This appeal stems from appellant Mervel George Jones III's convictions for assault of his significant other, A.M., and attempting to evade police during his arrest. The following facts summarize the evidence received during the jury trial and the relevant district court proceedings.

In January 2022, A.M.'s mother called the police to report that Jones had assaulted A.M. Mille Lacs Tribal Police Officers J.H. and D.S. responded to the house of A.M.'s mother, where they found A.M. According to the officers, A.M. had been "severely beaten." Her eyes were swollen, she was missing teeth, and she was bleeding profusely. Paramedics took A.M. to the local hospital. Later, she was transferred via helicopter to a level-one trauma center due to the severity of her injuries. A.M. had fractures involving both her upper and lower jaw and her nasal bones, lacerations on her lips, and damage to her gums and teeth.

In February 2022, respondent State of Minnesota charged Jones with first-degree assault under Minnesota Statutes section 609.221, subdivision 1 (2020); domestic assault under Minnesota Statutes section 609.2242, subdivision 4 (2020); and fleeing a peace officer under Minnesota Statutes section 609.487, subdivision 6 (2020). Jones entered a plea of not guilty and the matter proceeded to a five-day jury trial.

2

Jones, who was on intensive supervised release, was present on the first two days of trial for jury selection. The jury was sworn at the end of the second day. On the third day, Jones failed to appear for trial.

The district court judge noted Jones's absence for the record and asked defense counsel to try to reach Jones to determine the reason for Jones's absence. The judge specifically noted that the district court had a duty to conduct "an adequate investigation about the circumstances" surrounding Jones's absence. Defense counsel called Jones and also sent him a text message, but Jones did not respond. Defense counsel told the judge that Jones usually answers his phone. Defense counsel further indicated that Jones did not inform counsel that he would be absent.

The district court then decided to "conduct more of an investigation" to determine whether Jones was voluntarily absent from trial. A sergeant with the local sheriff's office testified at the court's request pursuant to rule 614(a) of the rules of evidence, which allows a district court to call its own witnesses. The sergeant, who was working as "a transport court security sergeant" at the time, testified that his job responsibilities included determining if "[a]nyone [who] shows up for court, or might show up for court" has an active warrant for their arrest. The sergeant further testified that, prior to the third morning of trial, he learned that Jones had an active Minnesota Department of Corrections (DOC) warrant because he violated the terms of his supervised release by cutting off his DOC ankle monitoring bracelet around 10:30 p.m. on the second day of trial and leaving the treatment facility where he resided. Following this testimony, the district court gave counsel for the parties an opportunity to cross-examine the sergeant. Both declined to do

3

so.  Additionally, both attorneys declined to make any argument or offer an opinion as to whether Jones was voluntarily absent from trial.

The court then took a 25-minute break to give Jones some additional time to appear. During the break, the judge reviewed court records from other matters, which showed that Jones had an extensive history with the court system dating back to the year 2000, including a number of warrants against him.  Following the break, Jones still had not appeared.  The judge asked defense counsel if he had heard from Jones and counsel answered, "No."  The judge then determined, in the presence of the parties' counsel but outside of the presence of the jury, that Jones had "intentionally abandoned a known right to be present at trial." In explaining the basis for the determination, the judge discussed some of Jones's court records and noted that Jones is "well aware of the system and how it works."  The district court also told counsel, "[W]e're going to proceed with trial with the hope that [defense counsel] can reach [Jones] and that he can rejoin us."  Defense counsel continued to try to reach Jones multiple times during trial but was unsuccessful.

The trial continued for three more days in Jones's absence.  The jury heard testimony from A.M., the investigating police officers, medical personnel, and a domestic-violence expert witness, among others.  The jury found Jones guilty of all three charged offenses.  Prior to sentencing, Jones was arrested on a warrant and the district court gave him an opportunity to explain his absence from trial.  Jones declined to offer any statement about his absence.

The district court convicted Jones of felony first-degree assault (count I) and misdemeanor fleeing a police officer (count III).  The district court sentenced Jones to the

4

presumptive sentence of 192 months' imprisonment for first-degree assault.  The district court also sentenced Jones to 90 days in jail for fleeing a peace officer, but the warrant of commitment reflects that Jones was given 90 days' credit for time served.

Jones appeals.

## DECISION

Jones seeks reversal of his convictions on the basis that the district court judge deprived him of a fair trial.  He first contends that the judge committed a structural error by independently investigating facts outside the record to determine if Jones was voluntarily absent from trial and sharing the results of that investigation in court, thereby depriving Jones of his constitutional right to an impartial judge.  Second, Jones maintains that he is entitled to a new trial because the judge violated the code of judicial conduct by not disqualifying himself after creating an appearance of bias during a discussion with counsel on a hearsay objection.  Each argument is addressed in turn.

**I.**    **The district court's investigation into the circumstances of Jones's absence from trial did not violate Jones's right to an impartial judge.**

Jones argues that the district court judge violated Jones's right to an impartial judge by reviewing court records as part of the court's inquiry into whether Jones's absence from trial was voluntary and relying in part on those records when determining that Jones waived his right to be present at trial.

Jones's argument implicates two constitutional rights of a criminal defendant: the right to be present at trial and the right to an impartial judge.  A criminal defendant has a constitutional right to be present at every stage of trial.  *State v. Finnegan*, 784 N.W.2d

5

243, 247 (Minn. 2010); U.S. Const. amends. VI, XIV; *see also Ford v. State*, 690 N.W.2d 706, 712 (Minn. 2005) ("A defendant's constitutional right to be present [at trial] is grounded in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment."). This right may be waived by the accused, either expressly or impliedly. Minn. R. Crim. P. 26.03, subd. 1(2); *State v. Cassidy*, 567 N.W.2d 707, 709 (Minn. 1997). "A defendant's voluntary absence without compelling justification . . . constitutes a waiver of the right to be present." *Cassidy*, 567 N.W.2d at 709 (quotation omitted).

If a defendant fails to appear for trial, the district court "must make sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary." *Finnegan*, 784 N.W.2d at 250 (quotation omitted). The inquiry must be made "efficiently," while also safeguarding the defendant's constitutional right to be present at trial. *Id.* Following the inquiry, the district court makes "a preliminary finding of voluntariness." *Id.* If the defendant is returned to custody before the sentence is imposed, the district court must afford the defendant the opportunity to explain his absence. *Id.* The supreme court has concluded that this process provides "a workable framework for district courts to utilize when confronting the question of [whether to continue] with a trial in the defendant's absence." *Id.*

A criminal defendant also has a constitutional right to a fair trial and to a fair and impartial judge. *State v. Duol*, ___ N.W.3d ___, ___, No. A22-0748, A24-1754, slip op. at 11 (Minn. Sept. 3, 2025); *see also* U.S. Const. amend. VI; Minn. Const. art. I, § 6. "[I]mpartiality is the very foundation of the American judicial system." *Greer v. State*,

6

673 N.W.2d 151, 155 (Minn. 2004). "A judge must maintain the integrity of the adversary system at all stages of the proceedings." *State v. Schlienz*, 774 N.W.2d 361, 367 (Minn. 2009). The law makes no distinction between a judge presiding over a bench trial and a judge presiding over a jury trial. *See State v. Malone*, 963 N.W.2d 453, 466-67 (Minn. 2021). Yet "[t]he mere fact that a party declares a judge partial does not in itself generate a reasonable question as to the judge's impartiality." *State v. Reek*, 942 N.W.2d 148, 156 (Minn. 2020) (quotation omitted). Rather, there is a presumption that the district court has discharged its duties properly. *McKenzie v. State*, 583 N.W.2d 744, 747 (Minn. 1998).

Jones argues that the district court violated his right to an impartial judge during its inquiry into Jones's absence from trial. Jones focuses on the district court's review of and reliance on court records from other matters to assist it in deciding whether Jones was voluntarily absent from trial. The state disagrees, arguing that the district court was required to conduct an independent inquiry into Jones's absence from trial before continuing with the trial to ensure Jones's constitutional right to be present at trial was not violated and further argues that the district court judge remained impartial throughout its inquiry.

We review de novo whether a judge's conduct deprived a defendant of the constitutional right to a fair trial and an impartial fact-finder. *State v. Dorsey*, 701 N.W.2d 238, 249 (Minn. 2005). Depriving a defendant of the constitutional right to an impartial judge is a structural error that requires automatic reversal and remand without regard for whether the defendant was prejudiced by the error. *Id.* at 253.

7

After Jones did not appear for trial on the third day and his counsel was unable to locate him, the district court conducted the required inquiry into the circumstances surrounding Jones's failure to appear to determine whether Jones was voluntarily absent. The district court's inquiry included calling the sergeant to testify and reviewing Jones's criminal records in the Minnesota Court Information System (MNCIS). As discussed above, the sergeant testified that Jones had an outstanding warrant because Jones cut off his ankle monitoring bracelet following the second day of trial and left the treatment facility where he was residing. The district court also reviewed Jones's MNCIS records, which showed that Jones had records going back to 2000 and had at least 33 warrants issued against him. Based on this information, the district court determined that Jones "absented himself intentionally" and had "abandoned a known right to be present at trial."

In seeking reversal of his convictions, Jones does not challenge the district court's decision to call the sergeant to testify as part of the inquiry into Jones's absence from trial. Rather, Jones argues that by reviewing MNCIS records from other cases, the judge transformed from an impartial judge to biased trier of fact and thereby deprived Jones of his right to an impartial judge.

Minnesota law identifies three types of judicial bias: actual bias, emergent bias, and perceived bias. *State v. Lopez*, 988 N.W.2d 107, 117 (Minn. 2023). Emergent bias occurs "when the trier of fact is not actually biased, but during the trial, something happens that transforms [the fact-finder] into a partial trier of fact." *Id.* Jones contends that the judge's investigation of Jones's court records constitutes emergent bias.

8

Jones relies on *Dorsey* to support his argument. In *Dorsey*, the state brought a charge of felony possession of marijuana. 701 N.W.2d at 241. The state further alleged that Dorsey was in possession of a firearm in conjunction with the marijuana and sought to impose a mandatory three-year minimum prison sentence. *Id.* The district court judge, sitting as the fact-finder in a bench trial, heard testimony from a defense witness about the date that the witness's boyfriend had died. *Id.* at 241, 243. That testimony was relevant to whether Dorsey constructively possessed the firearm in question. *Id.* at 242-43. The judge, who was familiar with the deceased boyfriend from drug court, directed her clerk to check whether the witness's testimony was accurate by looking into court records. *Id.* at 243-44. The records showed a different date of death. *Id.* at 244. Relying in part on this information, the district court found that the defense witness lacked credibility and convicted Dorsey of felony possession of marijuana while in possession of a firearm. *Id.* at 244-45.

On appeal, the supreme court concluded that the district court judge's questioning of the veracity of the defense witness's testimony, independent investigation of a fact testified to by a defense witness, and report of the results of the investigation to counsel deprived Dorsey of his constitutional right to an impartial judge and trier of fact. *Id.* at 250, 252. The supreme court explained that, by independently investigating a fact not introduced into evidence, the district court judge violated "her obligation as the finder of fact to refrain from seeking or obtaining evidence outside that presented by the parties during the trial." *Id.* at 250. "[T]he act of seeking information outside the record effectively transformed the court into an investigator for the prosecution, thereby

9

'eliminating any vestige of impartiality.'" *Lopez*, 988 N.W.2d at 119 (describing conduct at issue in *Dorsey* and quoting *Dorsey*, 701 N.W.2d at 250). In reaching its decision, the supreme court noted that it was "preserving the bright-line rule that judges may not engage in independent investigations of facts in evidence." *Dorsey*, 701 N.W.2d at 251. The supreme court further concluded that the violation of Dorsey's right to an impartial judge amounted to structural error requiring reversal and remand for a new trial. *Id.* at 253.

Recently, the supreme court issued an opinion in which it clarified that *Dorsey*'s holding applies in the context of a postconviction proceeding. *Duol*, slip op. at 11-13. *Duol* involved a petition for postconviction relief from convictions of first- and second-degree murder based on newly discovered evidence. *Id.*, slip op. at 2. The district court denied the petition for a new trial following a postconviction evidentiary hearing at which two witnesses testified. *Id.*, slip op. at 6-7. In its order denying the petition, the district court found that the testimony of one of the witnesses was not credible. *Id.*, slip op. at 7. In making this finding, the district court relied on details about the witness's criminal history that were not part of the postconviction record. *Id.* On appeal, Duol argued that the district court's independent investigation into the witness's criminal history deprived Duol of his constitutional right to an impartial judge. *Id.*, slip op. at 9-10. The supreme court agreed and concluded that the district court engaged in structural error. *Id.*, slip op. at 10. To remedy the district court's error, the supreme court reversed in part and remanded for a new evidentiary hearing. *Id.*, slip op. at 17.

In reaching its decision in *Duol*, the supreme court applied the legal principles outlined in *Dorsey*. *Id.*, slip op. at 11. The supreme court emphasized that the

constitutional right to "an impartial trial process 'requires that conclusions reached by the trier of fact be based upon the facts in evidence' and 'prohibits the trier of fact from reaching conclusions based on evidence sought or obtained beyond that adduced in court.'" *Id.* (quoting *Dorsey*, 701 N.W.2d at 249-50). As a result, the supreme court concluded that "the district court's deliberate independent investigation and use of extra-record facts in the [postconviction] order" violated Duol's constitutional right to an impartial judge. *Id.*, slip op. at 12-13. The supreme court noted that it has "never recognized an exception to [the] guardrail" prohibiting judges from performing "independent investigations of facts in evidence." *Id.*, slip op. at 11 (quotation omitted).

But the supreme court has not addressed a situation like that present in this case, where the district court was required to conduct its own inquiry into the defendant's absence from trial in order to protect the defendant's constitutional right to be present. *See id.*; *Finnegan*, 784 N.W.2d at 250. Instead, *Duol* and *Dorsey* both addressed situations where the parties presented evidence on the issues to be decided by the district court consistent with the adversarial process, but the district court nonetheless conducted its own independent investigation to evaluate witness credibility. *Dorsey*, 701 N.W.2d at 243-45; *Duol*, slip op. at 7-8.

Given the specific, unique circumstances of this case, we conclude that *Dorsey* and *Duol* are distinguishable and do not control the outcome here. As discussed above, a criminal defendant has a constitutional right to be present at trial. U.S. Const. amends. VI, XIV. To protect that right, the district court in this case was required to conduct an inquiry into whether Jones was voluntarily absent after Jones failed to appear on the third day of

11

trial. *Finnegan*, 784 N.W.2d at 243, 249-50. Additionally, the record reflects that the parties' attorneys were unable to provide any information regarding Jones's absence. Consequently, the district court could not rely on evidence presented by the parties to determine whether Jones was voluntarily absent and was forced to gather information of its own to determine whether Jones intentionally waived his constitutional right to be present at trial. In that regard, this case is materially different from both *Dorsey* and *Duol*, where the parties presented evidence on the issues before the court and the district court then went outside the record to determine witness credibility. *Dorsey*, 701 N.W.2d at 243-45; *Duol*, slip op. at 7-8. By contrast, in this case there was no evidence in the record from the parties as to the reason for Jones's absence.

Importantly and unlike in *Dorsey* and *Duol*, the district court's review of court records in this case did not transform the judge into a partial trier of fact or "eliminate[] any vestige of impartiality." *Dorsey*, 701 N.W.2d at 250 (quotation omitted); *Duol*, slip op. at 14. The transcript reflects that the judge fulfilled his duty to determine whether Jones's absence from trial was voluntary. *See Finnegan*, 784 N.W.2d at 249-50. In doing so, the district court gathered facts relevant to whether Jones's absence was an implicit waiver of a known right. *See State v. Richards*, 456 N.W.2d 260, 264 (Minn. 1990) (noting that the validity of a defendant's waiver of rights "'depends, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused'" (quotation omitted)). The judge did so to safeguard Jones's constitutional right to be present at trial. And, as this court stated in *Finnegan*, "a district court that makes a finding on the voluntariness of the defendant's absence [from trial]

without an adequate investigation creates substantial risk of retrial" following a postconviction petition if the defendant's absence was involuntary. 784 N.W.2d at 251.

For these reasons, we conclude that this case is distinguishable from *Dorsey* and *Duol*.[1] And we further conclude that, under the unique circumstances of this case, the judge did not violate Jones's right to an impartial judge by consulting court records from other matters as part of its inquiry into whether Jones waived his constitutional right to be present at trial by failing to appear. Contrary to Jones's suggestion, the district court judge's conduct did not result in emergent bias. As discussed above, the judge had a duty to conduct an "efficient" inquiry and counsel offered no information of assistance to the district court on the issue. *Id.* at 250. The undisputed facts in the record fail to demonstrate bias on the part of the judge. Our conclusion that the district court judge remained impartial is reinforced by the presumption that a district court discharges its duties properly.

---

[1] Jones also relies on nonprecedential caselaw to support his argument. *See, e.g.*, *State v. Bowlby*, No. A25-0086, 2025 WL 1792874, at *5 (Minn. App. June 30, 2025) (district court judge conducted independent research and relied on facts outside the record in a harassment restraining order (HRO) matter); *State v. Oxendine*, No. A24-1402, 2025 WL 1924657, at *4-6 (Minn. App. July 14, 2025) (district court judge relied on the judge's personal knowledge about the defendant that related to an essential element of the charged offense when finding the defendant violated a no-contact order); *State v. Scudder*, No. A21-1081, 2022 WL 1532553, *1-4 (Minn. App. May 16, 2022) (district court judge investigated facts during a restitution hearing); *State v. Weidenbach*, No. A16-1166, 2017 WL 1548619, at *2 (Minn. App. May 1, 2017) (district court judge based sentencing decision on information obtained through the judge's independent investigation of facts outside the record); *State v. Blanshan*, No. A14-1065, 2015 WL 4507811, at *2-3 (Minn. App. July 27, 2015) (district court judge relied on court order from separate case file that was not part of trial record to find defendant guilty of failing to register). Because these cases do not involve a judge's investigation into a defendant's absence from trial to safeguard the defendant's constitutional right to be present, they are not persuasive.

*McKenzie*, 583 N.W.2d at 747. We therefore decline to reverse Jones's convictions based on his claim that his constitutional right to an impartial judge was violated.

**II.    Jones is not entitled to relief on his disqualification argument.**

Jones next argues that he is entitled to a new trial because the district court judge became disqualified during trial by creating the appearance of bias while discussing a hearsay objection with counsel and thereby violated the code of judicial conduct. The state counters that Jones forfeited this argument by failing to raise it in district court. The state also contends that, if we do reach the argument, we should apply the plain-error standard of review and conclude that Jones is not entitled to relief on the merits of his claim. We begin with the state's forfeiture argument before turning to the standard of review and the merits of Jones's bias argument.

**A.    Jones has not forfeited his appearance-of-bias argument.**

The parties agree that Jones did not raise his judicial-disqualification argument before the district court, but they disagree as to whether the argument is forfeited as a result. The state contends that Jones's judicial-disqualification argument is barred because only a claim of actual bias, not a claim of an appearance of bias, can be raised for the first time on appeal and Jones has not alleged actual bias. In response, Jones contends that a reviewing court may address a judicial-disqualification argument based on the appearance of bias for the first time on appeal. On this issue, we agree with Jones.

In *Reek*, the supreme court considered an argument involving a failure to disqualify a judge even though the issue was not raised in district court. 942 N.W.2d at 154-55. In that case, the appellant argued that he was denied a fair trial before an impartial tribunal in

14

violation of the code of judicial conduct and the due process clause "because the district court judge failed to recuse himself after allegedly becoming partial to the [s]tate." *Id.* at 155. In district court, the appellant did not seek to disqualify the judge and did not raise the issue of impartiality. *Id.* Nevertheless, the supreme court reviewed the appellant's judicial-disqualification claim, which was based on an alleged appearance of bias. *Id.* at 155-56. The supreme court's decision in *Reek* supports a conclusion that we may consider Jones's judicial-disqualification argument based on an appearance of bias (otherwise known as "perceived bias") even though it is made for the first time on appeal. *See id.*; *Lopez*, 988 N.W.2d at 117 (stating that "perceived bias . . . arises when facts or circumstances might cause the public to reasonably question the impartiality of an unbiased court").

The state nonetheless urges us to conclude that Jones's argument is forfeited based on an earlier supreme court decision, *State v. Moss*, 269 N.W.2d 732 (Minn. 1978). In that 1978 case, the defendant "submitted to an omnibus hearing, two trials, and sentencing" without seeking recusal or otherwise raising an issue of bias. *Moss*, 269 N.W.2d at 735. The supreme court held that in those circumstances, the judgment would not be reversed "unless [the] defendant were able to show actual bias and not just the appearance of bias." *Id.* While *Moss* has not been expressly overruled, *Reek* demonstrates that an appellate court is not barred from reviewing a defendant's claim based on an appearance of bias even though it is raised for the first time on appeal. *See Reek*, 942 N.W.2d at 155-56. And this court applies the supreme court's most recent precedent. *See Prokop v. Indep. Sch. Dist. No. 625*, 754 N.W.2d 709, 715 (Minn. App. 2008) (noting that courts apply the "most

15

recent precedential case on point"). Like in *Reek*, we therefore consider Jones's argument for a new trial based on an appearance of bias.

**B.      We review Jones's argument de novo.**

We next consider the applicable standard of review. Jones contends that the de novo standard of review applies, while the state argues that plain-error review applies. We again agree with Jones.

In *Reek*, the supreme court applied the de novo standard of review to a claim of judicial disqualification under the code of judicial conduct. The supreme court did so even though the claim was raised for the first time on appeal. *Id.* at 156 (citations omitted). Because Jones likewise raises a claim of judicial disqualification under the code of judicial conduct, we follow *Reek* and apply de novo review to Jones's argument.

We acknowledge that two other supreme court cases support the state's position that plain-error review applies to a claim of judicial disqualification raised for the first time on appeal, but these cases predate *Reek*. *See State v. Finch*, 865 N.W.2d 696, 701 n.3 (Minn. 2015) (reviewing a judicial-disqualification claim for plain error); *see also Schlienz*, 774 N.W.2d at 366-67 (considering whether an ex parte communication between the district court judge and the prosecutor constituted plain error). Because *Reek* is the supreme court's most recent decision addressing the standard of review in this context, this precedent controls. *See Prokop*, 754 N.W.2d at 715. We therefore review Jones's argument de novo.

16

### C. Jones's right to a fair trial was not violated.

We turn next to the merits of Jones's argument. Jones argues that the district court judge violated rule 2.11(a) of the code of judicial conduct "when he presented evidentiary arguments helpful to the state," thereby creating an appearance of bias requiring disqualification.

Rule 2.11 of the code provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Minn. Code Jud. Conduct Rule 2.11(A). "Impartiality" is the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *State v. Pratt*, 813 N.W.2d 868, 876 (Minn. 2012) (quotation omitted). "A judge is disqualified due to an appearance of partiality if a reasonable examiner, with full knowledge of the facts and circumstances, would question the judge's impartiality." *Finch*, 865 N.W.2d at 703 (quotations omitted). We presume that district court judges properly discharge their duties. *Hannon v. State*, 752 N.W.2d 518, 522 (Minn. 2008).

Jones contends that the district court judge violated rule 2.11(a) of the code by not disqualifying himself after he created an appearance of bias. Jones's argument is based on the district court's conversation with counsel, outside the presence of the jury, about the admissibility of certain evidence and defense counsel's hearsay objection. After A.M. testified that she had no memory of the attack, the judge and counsel discussed the admissibility of (1) A.M.'s statements to law enforcement at the hospital and (2) body-camera footage from the officer who spoke with A.M. at her mother's house after her

17

mother called police. Defense counsel objected to admission of the evidence on hearsay grounds. The district court overruled the objection as to A.M.'s statements at the hospital.[2] The district court and the parties then engaged in a lengthy discussion regarding the admissibility of the body-camera footage from A.M.'s mother's house. Defense counsel reiterated his objection based on hearsay. The district court questioned whether the evidence met the definition of hearsay, asking defense counsel "if it really asserts the truth of anything." The district court further noted, "I'm not sure there's a whole lot that's said there."

The conversation continued:

> THE COURT: What would be the hearsay objection, because I don't know that it's offered to prove the truth of any matter asserted.
>
> DEFENSE COUNSEL: . . . [W]hat would be the purpose of introducing it at all?
>
> THE PROSECUTOR: To show [A.M.'s] mental state [at her mother's house]. That when confronted with questions, she didn't give any sort of response.
>
> THE COURT: I think that would probably fall under present sense impression.
>
> THE PROSECUTOR: Right.
>
> THE COURT: It could . . . be an excited utterance because . . . I watched the whole thing, and she's awfully upset . . . .
>
> DEFENSE COUNSEL: Well, I think it should be excluded also under [rule] 403.

---

[2] Jones does not challenge the admission of this evidence.

THE COURT: You mean too prejudicial?

DEFENSE COUNSEL: Too prejudicial and—

THE COURT: . . . I think it would be admitted for the purpose, in part, of proving the injury element. It's a start to it. It's not very scientific, obviously, but people can see that. . . . So I'll take a look at it under [rule] 403 . . . .

The following morning, the district court ruled on defense counsel's objection to the body-camera footage. It explained that:

> The State [is] offering a video . . . and I talked yesterday about hearsay exceptions and my opinion and ruling that it is a then existing mental, emotional, or physical condition hearsay exception under 803(3). And I made reference to present sense impression . . . [which is] found in 801 under non-hearsay. So present sense impression isn't a hearsay exception, it's just not hearsay . . . .
>
> . . . .
>
> [I]n any event, I think it also fits those criteria . . . under . . . [801(d)], a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter. And [Officer J.H.] will be here [and] he can be cross-examined, obviously, and [A.M.] was here, and she was cross-examined. So however the declarant is identified, whether it's [Officer J.H. or A.M.], the confrontation issues, I think, are satisfied there. And it would be a prior statement by a witness, one or the other, either [Officer J.H. or A.M.] or both. So I think that's covered.

Jones asserts that the judge violated the code of judicial conduct during the discussion set forth above by making statements favorable to the state and thereby creating an appearance of bias that required disqualification. Jones relies on *Schlienz* to support his position. Jones's argument is unavailing.

19

In *Schlienz*, the district court judge had an ex parte conversation with the prosecutor about the defendant's sentencing hearing. 774 N.W.2d at 363-64. The judge "suggested specific objections that the prosecutor could make" to the defense's forthcoming motion to withdraw his guilty plea. *Id.* at 367. These suggestions were based on the judge's personal legal research. *Id.* When the defendant later moved to withdraw his guilty plea, the prosecutor raised the objection suggested by the judge and the judge denied the defendant's motion. *Id.* at 364-65. The supreme court determined that "the judge's failure to recuse denied [defendant] the right to a fair hearing before an impartial decision maker." *Id.* at 369.

This case is factually distinguishable. Unlike *Schlienz*, this case does not involve an ex parte conversation between the judge and the prosecutor where the judge identified arguments that were helpful to the state, which the prosecutor had not yet made. *Id.* at 367. Here, defense counsel raised a general hearsay objection but did not object on specific grounds. *Cf. State v. Rodriguez*, 505 N.W.2d 373, 376 (Minn. App. 1993) ("An objection must be specific as to the grounds for challenge."), *rev. denied* (Minn. Oct. 19, 1993). To evaluate the objection, the judge engaged in a conversation with both attorneys on the record as to whether evidence at issue—the body-camera footage—included any hearsay statements, whether an exception to the general hearsay rule applied, or whether it should be excluded. The judge's discussion about the evidence did not suggest arguments to the state but rather reflects the judge's effort to "rule intelligently" on the hearsay objection. *Adelmann v. Elk River Lumber Co.*, 65 N.W.2d 661, 666 (Minn. 1954). In analyzing the

objection, the judge did not act in a way such that his "impartiality might reasonably be questioned." Minn. Code Jud. Conduct Rule 2.11(A).

We therefore conclude, based on our de novo review, that Jones has failed to demonstrate that the district court judge violated rule 2.11(a) or created an appearance of bias in ruling on the admissibility of the body-camera footage.

**Affirmed.**