**In re State of Minnesota, Petitioner,**

**STATE of Minnesota, Appellant,**

v.

**Myon DeMarlo BURRELL,
Respondent.**

**No. A07–727.**

Supreme Court of Minnesota.

Jan. 3, 2008.

---

*E.g.,* Iowa Code § 724.30 (2007) (penalizing one who "intentionally discharges a firearm

in a reckless manner").

Michael O. Freeman, Hennepin County Attorney, J. Michael Richardson, Assistant County Attorney, Minneapolis MN, Lori Swanson, Attorney General, St. Paul, MN, for Appellant/Petitioner.

Tracy R. Eichhorn–Hicks, Minneapolis MN, for Respondent.

## OPINION

ANDERSON, Russell A., Chief Justice.

Appellant State of Minnesota (the "State") petitioned the court of appeals for a writ of mandamus ordering the removal of the judge assigned to the retrial of respondent Myon DeMarlo Burrell ("Burrell"). The court of appeals denied the writ, and we granted review as to whether the judge should be removed for cause. We affirm.

In 2003, Burrell was convicted and sentenced in Hennepin County District Court for the first-degree murder of Tyesha Edwards for the benefit of a gang and the attempted first-degree murder of Timothy Oliver for the benefit of a gang.[1] On appeal, we reversed and remanded for a new trial based on concerns about *Mi-randa* violations, vouching testimony, and the adequacy of discovery. *State v. Burrell,* 697 N.W.2d 579, 605 (Minn.2005). We also addressed the propriety of admitting expert testimony from a Minnesota Gang Strike Force officer. *Id.* at 601–02. We directed the district court on remand to admit expert gang testimony only if necessary and helpful and to "weigh our directives in *DeShay* and *Lopez–Rios* carefully as it exercises discretion over what expert gang testimony is admitted."[2] *Id.*

A judge new to the case was assigned to the retrial. At a pretrial hearing, the State presented the testimony of a Minneapolis Police Department Gang Strike Force investigator. Also, at a *Frye–Mack* hearing, the State presented the testimony of two academic researchers on gangs who essentially challenged the underlying rationale of *DeShay* and *Lopez–Rios.* In an effort to comply with our directives, the judge made a series of rulings adverse to the State, including that "there is to be no [expert gang] testimony based on hearsay." *See State v. Roman Nose,* 667 N.W.2d 386, 394 (Minn.2003) ("On remand, it is the duty of the district court to execute the mandate of this court strictly according to its terms.").

---

1. Burrell was sentenced to life for the murder and 15 years for the attempt. He received an additional 12 months for the murder and 6 months for the attempt pursuant to Minn. Stat. § 609.229 (2006), which provides enhanced penalties for crimes committed for the benefit of a gang. *See* Minn.Stat. § 609.229, subds. 3–4.

2. *DeShay* and *Lopez–Rios* provide guidelines for assessing the admissibility of expert gang testimony. In *DeShay,* we stated, "That criminal gang involvement is an element of the crime does not open the door to unlimited expert testimony." *State v. DeShay,* 669 N.W.2d 878, 886 (Minn.2003).

   [E]xpert testimony must assist the jury to understand the evidence or to determine a fact in issue. The district court should scrutinize proffered gang expert testimony, preferably outside the presence of the jury, and exclude it where irrelevant, confusing, or otherwise unhelpful. Such testimony must add precision or depth to the jury's ability to reach conclusions about matters that are not within its experience. Moreover, this testimony must be carefully monitored by the court so that the testimony will not unduly influence the jury or dissuade it from exercising its independent judgment. * * * [E]xpert testimony should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* at 887–88 (citations and internal quotation marks omitted); *see also State v. Lopez–Rios,* 669 N.W.2d 603, 612 (Minn.2003).

The State argued that the judge's rulings precluded proof of certain elements of the for-benefit-of-a-gang offense. Acknowledging that under the circumstances it might be difficult to prove that the underlying crime was committed for the benefit of a gang, the judge referred to our mandate and declined to change his ruling. Nevertheless, he attempted to resolve his and the parties' confusion about expert gang testimony by certifying four questions to the court of appeals.[3] The court of appeals dismissed the certifications. *State v. Burrell,* No. A06–149, 2006 WL 2807166, at *5 (Minn.App. Oct.3, 2006), *rev. denied* (Minn. Dec. 20, 2006).

On January 16, 2007, the judge held a pretrial conference in chambers. At this conference, Assistant County Attorney Michael Furnstahl, who had taken over the prosecution, made his first appearance on the case. What exactly transpired at the conference is disputed. There is no transcript.[4] According to Furnstahl's affidavit, the judge twice said that the State could not prove "the case" and should dismiss it. Burrell's attorney, on the other hand, avers that the judge never commented on

the merits of the case. He explains that the judge

> mentioned that if the State was going to make a test case for the issue of [expert gang] testimony that perhaps this wasn't the case in which to do it. If [the judge] mentioned * * * dismissal it was only in this context as the discussion centered around the recent refusal by the Supreme Court to hear the certified questions.

He indicates that the discussion referred to the previous prosecutors' comments, to which Furnstahl was not privy.

The parties and the judge discussed the January 16 conference on the record at Burrell's jury trial waiver hearing, which took place on March 26, 2007. At the hearing, the State objected to the waiver or, alternatively, to the judge's remaining on the case. The State argued that the judge should remove himself because he had drawn conclusions about the merits of the State's case and because his knowledge of disputed facts made it improper for him to preside at a bench trial. The State referred to the judge's alleged comments at the January 16 conference that the case should be dismissed. The judge denied

---

**3.** The judge certified the following questions: (1) Do the Minnesota Supreme Court's decisions in [*DeShay* and *Lopez–Rios* ] prohibit expert opinion testimony regarding Rolling 30s Bloods gang culture and history, if the opinion is based on hearsay? (2)(a) Do *DeShay* and *Lopez–Rios* prohibit expert opinion testimony that the Rolling 30s Bloods constitute a criminal gang under Minn.Stat. § 609.229, if the opinion is based on hearsay? (2)(b) If the answer to (2)(a) is yes, and there is no evidentiary stipulation or adequate first-hand knowledge testimony, should the "criminal gang" element be proved through "*Spreigl*-type evidence," where evidence of individual gang members' offense histories is presented? (3) If the trial court finds that the prosecution's first-hand knowledge testimony re-

garding the defendant's gang membership is insufficient to meet its burden of proof under Minn.Stat. § 609.229, can an expert opine that the defendant is a member of the Rolling 30s Bloods based upon the gang Strike Force identification criteria? (4) Is the phrase "first-hand knowledge," as used in *DeShay* and *Lopez–Rios,* the equivalent of personal knowledge on the part of the expert? *State v. Burrell,* No. A06–149, 2006 WL 2807166, at *2 (Minn.App. Oct. 3, 2006), *rev. denied* (Minn. Dec. 20, 2006).

**4.** Minnesota Rule of Civil Appellate Procedure 110.03 permits the use of a trial-court-approved statement of the proceedings when a transcript is unavailable. The State elected not to avail itself of this option.

having gone so far but noted that the State should consider the risks associated with pursuing the for-benefit-of-a-gang offense in light of the evidentiary hurdles.[5] During the hearing, the judge said, "I represent to you unqualifiedly that I will listen to your case, hold you to your standard of proof, and that I have not prejudged the guilt or innocence of Mr. Burrell." He accepted the waiver and denied the request for removal.

The State next filed a motion with the chief district judge to remove the trial judge for cause.[6] The chief judge denied the motion, finding no evidence that the trial judge said the case should be dismissed. Instead, she determined the judge "was simply alluding to the same problems that the previous prosecutor complained about." She noted that the judge "has stated absolutely and unequivocally that he has not prejudged the guilt or innocence of Mr. Burrell" and that he "will try this case fairly and impartially."

Three days later, the State filed with the court of appeals a petition for writ of Mandamus directing removal.[7] The court of

---

5. The March 26 transcript contains the following exchange:

MR. FURNSTAHL: But, Judge, you made a statement to me, and here is where I want to be delicate, you made the statement to me that you thought the case should be dismissed.

THE COURT: I thought that there were sufficient concerns about the State's ability to pursue this case given where it now lies and given the impact on everybody * * * that you ought to consider whether it's appropriate to go forward or not. That's all I said. I didn't say * * * you should dismiss it. I said you ought to think about whether you ought to go forward or not. I think you still should think that. But that doesn't mean that if I hear the facts and they are different or one version is more believable than the other, which at this point I don't know because I haven't heard all those versions, that it's a different deal altogether.

MR. FURNSTAHL: With all due respect, I remember you telling me twice you thought the case should be dismissed. Maybe my memory isn't as clear as yours.

THE COURT: Well, I think you maybe—you may have heard something that I didn't in fact say.

MR. FURNSTAHL: Okay. But the fact that you have * * * been privy to disputed factual evidence and the fact that you've made that comment, it causes me a great deal of concern as to—

THE COURT: Well, * * * let me tell you what my concern is here about this case that was the basis for that discussion, and that is * * * whether you should consider whether it's really in the interest of the State to have this be the test case on the

gang issue. I don't * * * think that I'm asking you or suggesting to you that you dismiss the case on the merits. I don't know whether you can prove the case or not on the merits, but I think you are running a substantial risk that we get one more go-round of appeals and maybe even one more go-round of reversals. Because if your colleagues were correct when we issued the certified questions, we really don't know what the rule is on gang testimony. And I don't think—and I suggest that you ought to think about at least to that extent whether this is the right case to do that in. And I still think that.

MR. FURNSTAHL: I recall the discussion about the dismissal was in the context of our ability to prove the case because of, for example, Tim Oliver is no longer alive and Dr. Bruggemeyer is no longer alive.

THE COURT: But you know, the Tim Oliver problem is also a gang testimony problem. I mean the problem with the Tim Oliver previous trial transcript testimony is really much more attributable to the for-the-benefit-of-a-gang problem * * *.

6. "A request to disqualify a judge for cause shall be heard and determined by the chief judge of the judicial district * * *." Minn. R.Crim. P. 26.03, subd. 13(3).

7. The petition alternatively sought writs of prohibition (1) declaring that the trial judge abused his discretion by approving the jury trial waiver and (2) barring waiver without the State's consent. The court of appeals denied the writs of prohibition, and we denied review.

appeals denied the writ, deferring to the chief judge. The court noted that "the assigned judge has stated unequivocally that he '[has] not prejudged the guilt or innocence of [Burrell].'" The State petitioned this court for review, which we granted as to the issue of removal.

## I.

The State seeks a writ of mandamus ordering removal of the trial judge for cause. *See* Minn.Stat. § 586.01 (2006). We have held, however, that "[t]he proper remedy to pursue when a motion to remove has been denied is * * * a writ of prohibition." *State v. Cermak,* 350 N.W.2d 328, 331 (Minn.1984). Although we have not specifically defined the relationship between mandamus and prohibition, we need not construe the State's petition as for one or the other. "The question * * * is not the form of relief but rather the validity of the basis upon which it was awarded." *McClelland v. Pierce,* 376 N.W.2d 217, 219 (Minn.1985). Accordingly, we review the underlying issue of whether the State has shown cause for removal. *See State v. Dorsey,* 701 N.W.2d 238, 246 (Minn.2005) ("Whether a judge has violated the Code of Judicial Conduct is a question of law, which we review de novo."); *State v. Cheng,* 623 N.W.2d 252, 256, 257 (Minn. 2001) (indicating that "[w]e review the issuance of a writ of prohibition by reviewing the underlying issue" and noting that we have "inherent authority to ensure the effective functioning of the judiciary").

■ "A motion to remove a judge for cause is procedural and is therefore governed by the rules of criminal procedure." *Hooper v. State,* 680 N.W.2d 89, 93 (Minn. 2004). Under the rules, "[n]o judge shall preside over a trial or other proceeding if that judge is disqualified under the Code of Judicial Conduct." Minn. R.Crim. P. 26.03, subd. 13(3). However, "[n]o notice

to remove shall be effective against a judge who has already presided ·at the trial, Omnibus Hearing, or other evidentiary hearing * * *, except upon an affirmative showing of cause." *Id.,* subd. 13(4).

■ The Code requires a judge to "Perform the Duties of the Office Impartially and Diligently." Code of Judicial Conduct, Canon 3.

A judge shall disqualify himself * * * in a proceeding in which [his] impartiality might reasonably be questioned, including but not limited to instances where: (a) [he] has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding * * *.

*Id.,* Canon 3D(1). "'Impartiality' or 'impartial' denotes absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintaining an open mind in considering issues that may come before the judge." *Id.,* Canon 3F. "The grounds for disqualification in Canon 3D(1) are stated broadly, leaving considerable room for interpretation in their application to any given set of circumstances. Canon 3D(1) does not provide a precise formula that can automatically be applied." *Greer v. State,* 673 N.W.2d 151, 156 (Minn.2004) (citation and internal quotation marks omitted). Thus the canon requires a case-by-case analysis of particular circumstances.

■ In determining whether a judge should be disqualified under Canon 3D(1), the question is whether an objective examination of the facts and circumstances would cause a reasonable examiner to question the judge's impartiality. *See Dorsey,* 701 N.W.2d at 248; *Powell v. Anderson,* 660 N.W.2d 107, 116 (Minn. 2003). The mere fact that a party declares a judge partial does not in itself generate a

reasonable question as to the judge's impartiality.

> Judges, of course, should be sensitive to the "appearance of impropriety" and should take measures to assure that litigants have no cause to think their case is not being fairly judged. * * * Nevertheless, a judge who feels able to preside fairly over the proceedings should not be required to step down upon allegations of a party which themselves may be unfair or which simply indicate dissatisfaction with the possible outcome of the litigation.

*McClelland v. McClelland*, 359 N.W.2d 7, 11 (Minn.1984). Likewise, the fact that a judge avows he is impartial does not in itself put his impartiality beyond reasonable question.

In this case, the State argues that the trial judge's statements at the January 16 conference create a reasonable question as to his impartiality. Relying on Furnstahl's affidavit, the State asserts that the judge twice said the State had insufficient evidence for "the case" to "go to the jury."

The State's characterization of the judge's comments improperly conflates the for-benefit-of-a-gang claims with the underlying murder charges. The for-benefit-of-a-gang statute operates to enhance the penalty for the underlying crime. *See* Minn.Stat. § 609.229, subds. 3–4 (2006). Inability to prove with admissible evidence that the underlying crimes were committed for the benefit of a gang, however, would not preclude prosecution of the murder and the attempt. *See State v. Jackson*, 714 N.W.2d 681, 699 (Minn.2006) (Hanson, J., concurring). Pretrial, the parties extensively litigated the scope of permissible expert gang testimony. The resulting evidentiary rulings caused the former prosecutors to claim that they could not prove the for-benefit-of-a-gang claim. This concern induced the judge to certify the questions on expert gang testimony. The court of appeals declined to answer them on October 3, 2006, and we denied review on December 20. On January 16, the parties met in chambers to set a trial date. Given this timeline, it is evident that comments about dismissal on January 16 pertained to the gang crimes.[8] As the judge explained at the March 26 hearing, the January 16 discussion was based on concern over having "this be the test-case on the gang issue." Other than Furnstahl's remarks at the March 26 hearing and his subsequent affidavit, nothing in

---

8. Burrell argues that the State is seeking removal of the trial judge not because of genuine concern about impartiality but because it is "shopping" for a judge who would more liberally admit expert gang testimony. In the context of the larger battle over expert gang testimony, it is conceivable that the State is seeking a judge who will rule more favorably as it seeks to challenge *DeShay* and *Lopez–Rios*. Even if the State were successful in replacing him, however, the current judge's pretrial rulings would stand unless the State could demonstrate "extraordinary circumstances." *See* Minn. R.Crim. P. 11 cmt. ("[W]hen the Omnibus Hearing is held before a judge other than the trial judge, the trial judge, except in extraordinary circumstances will adhere to the findings and determinations of the Omnibus Hearing judge."); see also *State v. Hamling*, 314 N.W.2d 224, 225 (Minn. 1982) ("[W]e do not believe that this is an appropriate case for attempting a full-scale examination of the factors which are relevant to a determination of when a trial judge is justified in modifying or changing an omnibus order of another district court judge."). The concurrence mischaracterizes what we have said in this note, but we will not engage in an extended debate over the meaning of our words. It suffices to state that we have not concluded and do not imply that the State's motion to remove was motivated by judge-shopping or that the motion was frivolous. Nor have we concluded, or even suggested, that the current judge's pretrial rulings would be "binding" if a different judge presided at trial.

the record suggests that the judge expressed an opinion about the State's ability to prove the underlying crimes. The judge's comments constituted a valid observation based on the history of the case and the State's own comments, not prejudgment on the merits of the underlying charges. Our objective examination of the facts and circumstances satisfies us that the judge's January 16 comments created no reasonable question as to his impartiality.

## II.

■ The State also appears to argue that the judge's knowledge of disputed facts acquired during pretrial proceedings should disqualify him from presiding at a bench trial. The United States Supreme Court has held that

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). We have noted that "it is presumed that judges will set aside collateral knowledge and approach cases with 'a neutral and objective disposition.'" *Dorsey,* 701 N.W.2d at 248–49 (citing *Liteky,* 510 U.S. at 562, 114 S.Ct. 1147). To defeat this presumption, the State would have to adduce evidence of favoritism or antagonism. The State has failed to do so. Therefore, we conclude that the judge's knowledge of disputed facts does not merit disqualification.

We hold that the State did not meet its burden to make an affirmative showing of cause for the trial judge's removal and that

the court of appeals properly denied the extraordinary writ.

Affirmed.

GILDEA, J., took no part in the consideration or decision of this case.

ANDERSON, PAUL H., Justice (concurring).

I concur with the majority that an objective examination of the facts and circumstances of this case mandates a holding that the Chief Judge of the Hennepin County District Court did not err when she denied the state's motion to remove the trial judge because he lacked impartiality. Nevertheless, I write separately for two reasons. First, I disagree with comments the majority makes with respect to judge "shopping." The majority implies that the state might be trying to use its motion to have the trial judge removed for cause as a way to find another judge who would rule more favorably on the issue of what expert gang testimony should be admitted. Second, I disagree with the majority's conclusions as to the status of the judge's pretrial rulings.

In response to the state's motion to remove the trial judge, Burrell asserted that the state's real reason for trying to remove the judge is not a genuine concern about the judge's impartiality, but is instead a desire to get a new judge assigned to the case who would issue more favorable rulings on what expert gang testimony should be allowed. In commenting on this argument, the majority concludes that "[i]n the context of the larger battle over expert gang testimony, it is conceivable that the State is seeking a judge who will rule more favorably as it seeks to challenge *DeShay* and *Lopez–Rios.*" *DeShay* and *Lopez–Rios* are recent opinions we issued on the admission of expert gang testimony in criminal trials. *State v. DeShay,* 669

N.W.2d 878 (Minn.2003); *State v. Lopez–Rios,* 669 N.W.2d 603 (Minn.2003).

I do not conclude that the state is judge "shopping" or that it filed its motion to remove the trial judge for cause for the purpose of getting a new judge who might rule more favorably on what expert gang testimony the state could offer. The state asked the judge to remove himself for cause immediately after learning that Burrell was considering waiving his right to a jury trial. Here, it is important to maintain a focus on the sequence of events. The state made its motion to remove the judge in March 2007 based upon comments the judge allegedly made in January 2007. The record shows that in January there was no indication that Burrell was considering waiving his right to a jury trial. Therefore, this new fact that the judge was going to be the trier of fact was a significant change in the status of the case. Because of this change, it is understandable that the state would have heightened concerns about comments it believed the judge made in January about the strength of the state's case. Legitimate concern about whether the judge had already made up his mind about the case provides a proper basis to move to remove the judge because of impartiality. This concern, while not sufficient to warrant removal under the facts and circumstances of this particular case, has merit and the state's motion surely was not frivolous.

I am also aware of the particular circumstances of the party making this motion. Unlike a private litigant who may easily think that he will never again appear before a specific trial judge in a matter, or even in Hennepin County District Court again, the state will have many more cases before this judge and his colleagues. The state appears on a daily basis before several judges in Hennepin County District Court. As a result, I believe that the state would be cautious in bringing a motion that, in essence, asserts that a particular judge will not be impartial, and that it would not bring such a motion lightly at this stage of a criminal proceeding as a means to disqualify a judge with whom it was merely unhappy. Therefore, I disagree with the majority's implication that the state's motion in this case is about judge shopping. I conclude that the reasons are more substantive and profound; and are based on legitimate concerns about obtaining a fair trial. Thus, while I agree that those concerns do not rise to a level that warrants removal of this judge, we should acknowledge that the state's reasons for bringing its motion are legitimate and should not be dismissed as merely judge shopping.

I also disagree with the majority's position with respect to the trial judge's pretrial rulings. In discussing the state's motives for bringing the motion to remove the judge, the majority notes that, "[e]ven if the State were successful in replacing him, * * * the current judge's pretrial rulings would stand unless the State could demonstrate 'extraordinary circumstances.'" Unlike the majority, I do not believe that the judge's prior rulings are binding on this judge or a new judge. These rulings regarding what a gang expert can base his or her opinion on and what specific expert gang testimony could be admitted in this case were made in October and November 2005. I conclude that a new judge, as well as the current judge, is free to reconsider the prior rulings relating to expert gang testimony because the law in this area is more fully developed since those rulings were made in late 2005. Further, I conclude that the judge's prior rulings were premature and based on an inadequate record.

Not counting our decision reversing Burrell's convictions, we addressed the ad-

mission of gang-expert testimony in six recent cases, three of which were decided after we issued *State v. Burrell,* 697 N.W.2d 579 (Minn.2005) and after the trial judge made his rulings in this case. *See State v. Mahkuk,* 736 N.W.2d 675 (Minn. 2007); *State v. Martinez,* 725 N.W.2d 733 (Minn.2007); *State v. Jackson,* 714 N.W.2d 681 (Minn.2006); *State v. Blanche,* 696 N.W.2d 351 (Minn.2005); *State v. DeShay,* 669 N.W.2d 878 (Minn.2003); *State v. Lopez–Rios,* 669 N.W.2d 603 (Minn.2003).

In these cases, we cautioned against the use of gang-expert testimony in criminal cases. *Blanche,* 696 N.W.2d at 374; *Lopez–Rios,* 669 N.W.2d at 612. We said, "gang-expert testimony should be admitted only if it is helpful to the jury in making the specific factual determinations that jurors are required to make." *Blanche,* 696 N.W.2d at 373. In *Mahkuk,* we said, "[t]o be admissible, gang expert testimony must add precision or depth to the jury's ability to reach conclusions about matters that are not within its experience." 736 N.W.2d at 686 (internal quotation marks omitted). While we have not stated that a gang expert could not base his or her opinion on hearsay, we have stated that "the state should not be permitted to launder inadmissible hearsay evidence, turning it into admissible evidence by the simple expedient of passing it through the conduit of purportedly 'expert opinion.'" *DeShay,* 669 N.W.2d at 886.

Our comments in *DeShay* about the impropriety of using an expert as a means to have inadmissible hearsay evidence admitted are consistent with the Minnesota Rules of Evidence regarding expert testimony generally. *See* Minn. R. Evid. 703 ("If a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data [upon which the expert relied in forming his or her opinion] need not be admissible in evidence."). As the Committee Comment to Rule 703 notes, this rule "is aimed at permitting experts to base opinions on reliable hearsay and other facts that might not be admissible under these rules of evidence." Minn. R. Evid. 703 comm. cmt.–1989. However, "[a]lthough an expert may rely on inadmissible facts or data in forming an opinion, the inadmissible foundation should not be admitted into evidence simply because it forms the basis for an expert opinion." *Id.* Rule 703(b) requires that "[u]nderlying expert data * * * be independently admissible in order to be received upon direct examination."

In some of our cases, we have concluded that the admission of gang-expert testimony was proper, while in others we have held it was in error, albeit harmless error. For example, in *Mahkuk* we held that in a trial for first-degree premeditated murder and first-degree premeditated murder for the benefit of a gang, it was within the "permissible scope of gang expert testimony" for an expert to testify about the defendant's membership in a specific gang, the rivalry between the defendant's gang and another gang, and the specific reasons why the victims may have been targeted in this case. 736 N.W.2d at 686. On the other hand, in *Blanche,* a trial for first-degree murder, conspiring to commit first-degree murder, and crime committed for the benefit of a gang, we held that it was error to allow a gang expert to testify about the conduct of gang members in general, including that gang members retaliate against each other by shooting at each other, because we concluded that under the facts in *Blanche,* "there was a risk that the jury would improperly use this evidence to conclude that Blanche was the shooter simply because he is a member of a gang." 696 N.W.2d at 374. We also said that it was error to allow a gang expert to testify that gang members in

general do not falsely accuse their own gang members of crime, but we held that the erroneous admission of this testimony did not warrant a new trial. *Id.* In *DeShay,* we held that gang-expert testimony about crimes that gangs in general commit or about drive-by shootings and criminal sexual conduct committed by the gang that defendant was a member of were "neither helpful nor relevant to the fact issues before the jury," where the defendant was charged with conspiracy to commit a controlled-substance crime. 669 N.W.2d at 886. Nevertheless, we held that the admission of the expert's testimony was harmless error. *Id.* at 888. Finally, in *Lopez–Rios,* we held that it was error to admit much of a gang expert's testimony, but that the error was harmless. 669 N.W.2d at 612–13.

We have issued several opinions in the area of gang-expert testimony that were not directly referenced in *State v. Burrell* when we instructed the district court, on remand, to determine what gang-expert testimony should be admitted. *See* 697 N.W.2d 579, 601–02 (Minn.2005). It does not appear that these more recent opinions were considered by the trial judge when he first made his evidentiary rulings on this issue. When our holdings in these newer cases and our earlier cases are properly considered, it becomes evident that whether gang-expert testimony is admissible in a particular case often depends on the trial record and the trial testimony of lay witnesses. For example, in *Mahkuk,* we noted that "[w]hen feasible," it is best to prove the "for-the-benefit-of-a-gang element" through the testimony of lay witnesses who have firsthand knowledge of gang related issues. 736 N.W.2d at 686. In *Blanche,* we said that to be admissible, "the gang expert's testimony must have been helpful to the jury in making factual determinations" and that it was error to admit the testimony in that case, in part,

because it was "largely duplicative" of testimony given by fact witnesses. 696 N.W.2d at 374; *see also Lopez–Rios,* 669 N.W.2d at 612. In *DeShay,* we noted that in order to be admissible, a gang-expert's testimony must be helpful to the jury, but that "[g]ang expert testimony in this non-complex drug conspiracy, to the extent relevant, was largely duplicative, giving little assistance to the jury in evaluating the evidence." 669 N.W.2d at 886.

In its opinion dismissing the trial judge's certified questions regarding the admissibility of gang-expert testimony, the court of appeals aptly noted that it could not answer several of the certified questions because the answers were largely "contingent upon testimony that may or may not be presented, or may be ruled inadmissible, at trial." *State v. Burrell,* No. A06–149, 2006 WL 2807166, at *4 (Minn.App. Oct.3, 2006), *rev. denied* (Minn. Dec. 20, 2006). I agree. I conclude that it was premature for the trial judge to issue rulings on what, if any, expert testimony should be allowed in this case until there was a more developed trial record, and it became clear what lay witness testimony the state had actually presented on the homicide charge in general and the for-the-benefit-of-a-gang element in particular. I conclude that this need for a more fully developed record, combined with our additional case law on the issue of gang-expert testimony, case law which has developed since the time of the trial judge's initial rulings, unquestionably points to a conclusion that the trial judge not only may but must reevaluate his evidentiary rulings, and if necessary, change those rulings. To conclude otherwise would unduly elevate form over substance.