*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1373**

State of Minnesota,
Respondent,

vs.

Corey Lee Melde,
Appellant.

**Filed July 21, 2014
Affirmed in part and reversed in part
Klaphake, Judge**

Stearns County District Court
File No. 73-CR-12-9587

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, John B. Galus, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Stan Keillor, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Smith, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KLAPHAKE**, Judge

Appellant Corey Lee Melde challenges his two convictions of third-degree criminal sexual conduct, arguing that the prosecutor committed prejudicial misconduct, the district court abused its discretion by admitting certain evidence, the evidence was insufficient to support one conviction, and the district court was not impartial. Appellant also challenges his sentence. We affirm appellant's conviction and sentence for criminal sexual conduct, nonconsensual anal penetration, but reverse appellant's conviction for criminal sexual conduct, nonconsensual vaginal penetration, based on insufficient evidence.

## DECISION

### I.

Appellant argues that the prosecutor committed misconduct by eliciting testimony from an officer that appellant exercised his right to remain silent after being given a *Miranda* warning. Because appellant did not object, our analysis is under the plain-error standard. *See* Minn. R. Crim. P. 31.02. An error is plain if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). When prosecutorial misconduct constitutes "plain or obvious error [such as] conduct the prosecutor should know is improper[,]" the state bears the burden of showing the "misconduct did not prejudice the defendant's substantial rights." *Id*. at 299-300. The overarching concern is that prosecutorial misconduct could deny the defendant's right to a fair trial. *Id*. at 300.

The state argues that there was no misconduct because the defense opened the door to this testimony on cross-examination of the officer, or in the alternative that any error did not prejudice appellant. The pertinent exchange:

> Defense: And one of the things [the sergeant] asked you to do was to try and see if you could get some photographs taken of [appellant], correct?
> Officer: Correct.
> Defense: And that would include, I'm sure, photographs generally to see if there were signs of injury as well as photographs of his penis to see if there were any signs of injury there?
> Officer: Yes.
> Defense: When you got back to the station, did you ever specifically ask [appellant] whether you could take photographs of him?
> Officer: I did not.
> Defense: Okay. And so you don't know – ultimately you didn't take photographs of [appellant]?
> Officer: Correct.

On re-direct, the prosecution sought to clarify this testimony:

> Prosecutor: [Defense counsel] was talking to you at the end about taking pictures, and I didn't talk to you about this before, given [appellant] has a right to remain silent –
> Officer: Correct.
> Prosecutor: -- but you did read the defendant the Miranda warning, correct?
> Officer: Yes.
> Prosecutor: And he ultimately chose not to speak with you?
> Officer: Correct.
> Prosecutor: And when somebody chooses not to speak with you, you no longer ask them anymore questions, correct?
> Officer: Yes.
> Prosecutor: Had [appellant] spoken with you, is that the time when you maybe would have got to get photographs of him or ask him if he wanted photographs taken?
> Officer: Yes.

3

Generally, evidence that a defendant exercised his constitutional right to remain silent may not be admitted at trial. *State v. McCullum*, 289 N.W.2d 89, 92 (Minn. 1979); *see also Doyle v. Ohio*, 426 U.S. 610, 618, 96 S. Ct. 2240, 2245 (1976) (stating "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used" as impeachment evidence). Appellant argues that the prosecutor was not justified in eliciting constitutionally protected information. We agree. Although *McCullum* held that even constitutionally protected information, such as post-arrest silence or a request for counsel, may be elicited from a witness if defense counsel has opened the door to that testimony, this case is distinguishable. *Id.* at 92-93. The exception narrowly applies to those situations where the defense has presented a misleading view of the defendant's actions following arrest. *See Doyle*, 426 U.S. at 620 n.11, 96 S. Ct. at 2246 n.11 (noting that "the fact of post-arrest silence could be used by the prosecution . . . to challenge the defendant's testimony as to his behavior following arrest"). For example, in *McCullum*, defense counsel elicited testimony from police officers that the defendant had been courteous and cooperative with the investigation. *McCullum*, 289 N.W.2d at 93. There, the supreme court held it was permissible for the prosecutor to question one of the officers about appellant's refusal to provide a statement until he spoke with an attorney. *Id*.

Here, defense counsel elicited testimony implying that the officer had not done a thorough job of investigating by failing to take photographs of appellant; the testimony did not present a misleading view of appellant's post-arrest actions. *See State v. Bailey*, 732 N.W.2d 612, 622 (Minn. 2007) (stating that the "opening the door" doctrine prevents

4

one party from gaining an unfair advantage by presenting the fact-finder with a "misleading or distorted representation of reality") (quotation omitted). Accordingly, it was error for the prosecution to question the officer about appellant invoking his right to remain silent. However, we conclude that the state met its burden of showing that the error did not prejudice appellant. It was clear that the prosecution was attempting to use the testimony to rebut the implication that the officer had not done a thorough investigation—not to imply that appellant was guilty because he had invoked his right to remain silent. Further, there was no mention of the post-arrest silence at any other point throughout the trial, and the risk of unfair prejudice was reduced because the case was tried to a judge rather than a jury. *See State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009) (concluding that the risk of unfair prejudice is reduced in a bench trial because "there is comparatively less risk that the district court judge, as compared to a jury of laypersons, would use the evidence for an improper purpose or have his sense of reason overcome by emotion").

## II.

Appellant argues that the district court abused its discretion by admitting the recorded statements that the victim, E.K., made to police. The statements were admitted by the district court under both the excited-utterance and residual exceptions to the hearsay rule. Evidentiary rulings are reviewed for a clear abuse of discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

Appellant argues that E.K.'s recorded statements do not qualify for the excited-utterance exception because the statements were made more than 30 minutes after the

alleged sexual assault and because E.K. was "quiet, and did not appear to be upset" when originally talking to police inside the home. The excited-utterance exception applies to hearsay if it "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Minn. R. Evid. 803(2). The district court acts within its discretion when it admits statements made under the "aura of excitement" from the startling event. *State v. Martin*, 614 N.W.2d 214, 223-24 (Minn. 2000). The district court must consider all relevant circumstances including "the length of time elapsed, the nature of the event, the physical condition of the declarant, [and] any possible motive to falsify." *State v. Daniels*, 380 N.W.2d 777, 782-83 (Minn. 1986) (quotation omitted). Here, the district court concluded that E.K. was still under the "aura of excitement" from the assault when she gave her statement to police. The district court reasoned that E.K. was "reluctant to talk about [the sexual assault] until after she left the trailer" and that "based on the tone of voice and other circumstances revealed by the recording, . . . she was still under the stress of the event."

Based on the record, the district court did not abuse its discretion by admitting the recorded statements as excited utterances. While it is true that E.K. was originally calm, as soon as she was separated from appellant and saw her brother outside she was shaking, sobbing and "appeared to be very rattled." She started crying and said, "I just want it to stop." The recorded statements were taken approximately 30-45 minutes after the sexual assault. There are "no strict temporal guidelines for admitting an excited utterance." *State v. Bauer*, 598 N.W.2d 352, 366 (Minn. 1999). The statements here were made within a time range that other cases have found acceptable for the excited utterance

6

exception.  *See State v. Berrisford*, 361 N.W.2d 846, 850 (Minn. 1985) (affirming the admission of a statement made "just 90 minutes after the murder"); *Daniels*, 380 N.W.2d at 783-4 (Minn. 1986) (affirming the admission of statements made "within an hour" of a fire).

Finally, appellant argues that E.K.'s statement wasn't trustworthy because E.K.'s brother, J.S., urged her to change her story.  The record shows that J.S. encouraged E.K. to tell officers the truth or tell them what happened, but never specifically encouraged her to report that she had been sexually assaulted.  Further, J.S. was not in the trailer when officers interviewed appellant and E.K. together, so he would not have known what she told officers inside.  E.K. had no motive to lie about the assault because she was in a relationship with appellant and testified at the trial that she still loved him.  Based on all of the circumstances, the district court did not abuse its discretion by admitting the statements under the excited-utterance exception; therefore, we do not address the residual exception.

**III.**

Appellant argues that the district court abused its discretion by allowing the state's expert to testify generally about typical characteristics of domestic abuse victims, particularly delayed reporting, because there was no delayed reporting in this case. Expert opinion testimony is admissible if it is foundationally reliable and will assist the trier of fact in understanding the evidence or determining a fact in issue.  Minn. R. Evid. 702.  The district court has discretion to admit expert testimony, and its determination

7

will not be reversed "absent an apparent error." *State v. Grecinger*, 569 N.W.2d 189, 194 (Minn. 1997).

Here, the district court concluded that the expert testimony would be admissible if the witness provided a "basis to infer that battered woman syndrome may explain the victim's counterintuitive behavior." The most obvious counterintuitive behavior exhibited by E.K. was her initial denial that a sexual assault had taken place, followed by her statement to officers around thirty minutes later where she claimed to have been sexually assaulted. In addition, E.K. testified that she didn't remember what happened the night appellant was arrested because she had a seizure, but other witnesses testified that they didn't observe any noticeable symptoms that would indicate E.K. had suffered a seizure. Finally, E.K. testified that she did remember having anal sex even though appellant knew she didn't want to, but that she loved him and didn't want to testify in the case. Generally, "expert testimony on battered woman syndrome would help [the fact finder] to understand the behavior of a woman suffering from the syndrome, which might otherwise be interpreted as a lack of credibility." *Id.* at 195. The expert testified generally about coercive tactics used by abusers, reasons victims stay in relationships with abusers, the behavior of victims when police get involved, and how abusers persuade victims to recant their stories. Particularly pertinent here was the expert's testimony about why a victim might initially deny that abuse had occurred, and why a victim may be reluctant to testify in front of the abuser. The district court did not err by admitting the expert testimony.

Appellant argues that the evidence was insufficient to support his conviction for nonconsensual vaginal penetration because E.K. testified that the vaginal sex was probably consensual. A claim of insufficient evidence is reviewed to determine "whether the facts in the record and the legitimate inferences drawn from them would permit the [fact finder] to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *Davis v. State*, 595 N.W.2d 520, 525 (Minn. 1999) (quotation omitted). We view the evidence in the light most favorable to the verdict and assume the fact finder believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Brocks*, 587 N.W.2d 37, 42 (Minn. 1998). "[A] conviction can rest on the uncorroborated testimony of a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted).

Appellant argues that his conviction was based only on statements made by E.K. to police, and that those statements were too equivocal to sustain the conviction. We agree. E.K.'s recorded statement from the night of the alleged assault involved the following exchange:

> Q: Did he assau-assault you in any other way sexually?
> A: He put it in my vagina.
> Q: He put it in your vagina also?
> A: Yes.
> Q: And when you say it, you're talking about his penis?
> A: Yes.

Appellant claims that E.K.'s response about vaginal sexual assault was not "positive and uncontradicted" because she never specified if the vaginal intercourse was consensual.

9

*See id.* at 539 (noting that "positive and uncontradicted" testimony of a victim may sufficiently support a conviction). In addition, E.K. testified at trial that she couldn't remember the evening, but that the vaginal sex was probably consensual. Text messages sent between E.K. and appellant throughout the day of the assault indicated that the two were planning a consensual sexual encounter. Accordingly, we conclude that there was insufficient evidence to support appellant's conviction for nonconsensual vaginal penetration. Because appellant did not receive a sentence for this conviction, reversal of this count will not affect appellant's sentence.

### V.

Appellant argues that he was deprived of his right to a fair trial because the district court was not impartial. Whether a defendant was deprived of his constitutional right to an impartial fact finder is a constitutional question reviewed de novo. *State v. Hicks*, 837 N.W.2d 51, 59 (Minn. App. 2013), *review granted* (Minn. Nov. 12, 2013). A district court judge is presumed to have been neutral and objective; that presumption is overcome only if the party alleging bias provides evidence of favoritism or antagonism. *State v. Burrell*, 743 N.W.2d 596, 603 (Minn. 2008); *McKenzie v. State*, 583 N.W.2d 744, 747 (Minn. 1998). "[T]he question is whether an objective examination of the facts and circumstances would cause a reasonable examiner to question the judge's impartiality." *Burrell*, 743 N.W.2d at 601.

First, appellant claims that the judge's questions to appellant on the stand exhibited partiality. Appellant testified that he had consensual sex with E.K. between 9:30 and 11:00 p.m. Appellant and E.K. had exchanged text messages about engaging in

10

consensual sexual activity, and the judge attempted to clarify appellant's memory about whether those messages were sent before or after the alleged consensual sex. Appellant argues that the judge's questions "appear to reflect a view that the text messages about sex were not significantly exculpatory." But there was nothing about the questions that overtly suggested the judge was partial to the prosecution. Appellant also argues that the district court clearly erred by finding that the text messages were sent when appellant was outside the mobile home with J.S. and E.K. was inside. But appellant claims this finding is erroneous because the district court must have credited J.S.'s testimony about the timeline of events and discredited appellant's testimony. As the fact finder in this bench trial, the district court was in the best position evaluate the credibility of the witnesses, and we defer to its findings.

Second, appellant argues that judge showed bias by interrupting the prosecutor's closing argument and coaching the prosecutor, stating:

> Before you get to that, could you point to specific testimony from [E.K.], either yesterday's or in her statement, that would establish that the vaginal sex was not consensual? . . . And I'll look at my notes, but I thought [E.K.] was primarily, if not solely, talking about the non-consensual nature of the anal sex, but I didn't get anything real clear about whether the vaginal sex was non-consensual.

We see no overt bias in these questions; the district court simply sought to clarify the evidence in the record.

Finally, appellant argues that the judge clearly erred by finding that appellant's statement that E.K. "bit my dick" was not a statement of fact, but one of frustration at E.K's unwillingness to have sex with him. Appellant claims this finding shows a pro-

11

prosecution bias because there was no evidence to support it, and it excuses the police failure to investigate a possible injury to appellant's penis. The state conceded at oral argument that there was no basis in the record for the finding. But even so, the finding does not demonstrate a pro-prosecution bias or prejudice to appellant because the statement was irrelevant as to the ultimate question of whether or not E.K. was sexually assaulted. Because none of appellant's claimed actions by the judge exhibits "favoritism or antagonism," appellant has not provided evidence that overcomes the presumption of neutrality.

## VI.

Appellant argues that there are compelling reasons to adjust appellant's "top-of-the-box" presumptive sentence to a mid-range sentence because the district court relied on improper factors in imposing a higher sentence. Sentencing decisions are reviewed for an abuse of discretion. *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). But a decision to impose a sentence within the presumptive guidelines range is generally not reviewable. *Id*. Only in "rare" circumstances will this court reverse a presumptive sentence. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). "[A]bsent compelling circumstances," this court will not exercise its authority to modify a presumptive a sentence. *State v. Freyer*, 328 N.W.2d 140, 142 (Minn. 1982).

Appellant argues that cases such as *Kindem* and *Freyer*, which have been read to impose an effective ban on the review of presumptive sentences, should be revisited because the presumptive sentencing guideline ranges were substantially broadened in

12

2005. *See State v. Jackson*, 749 N.W.2d 353, 360 (Minn. 2008) (explaining that prior to 2005 the presumptive range was 15% and that changes to the guidelines resulted in a range of 35%). While we acknowledge that the change gives judges more discretion in imposing sentences than existed in the past, we decline to address appellant's argument in this case. The district court did not provide reasons for imposing a presumptive sentence at the high end of the permitted range, nor was it required to do so. *See State v. Curtiss*, 353 N.W.2d 262, 263 (Minn. App. 1984) (stating that "a written explanation is not required when the court considers reasons for departure but elects to impose the presumptive sentence"). Accordingly, appellant's claims that the district court relied on improper factors in imposing the sentence cannot be reviewed.

**Affirmed in part and reversed in part.**