*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1822**

State of Minnesota,
Respondent,

vs.

Eh Doh Par,
Appellant.

**Filed November 20, 2023**
**Affirmed**
**Schmidt, Judge**

Mower County District Court
File No. 50-CR-19-1119

Keith Ellison, Attorney General, Ed W. Stockmeyer, Assistant Attorney General, St. Paul, Minnesota; and

Kristen M. Nelsen, Mower County Attorney, Austin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Paul J. Maravigli, Special Assistant Public Defender, Minneapolis, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Bjorkman, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

In this appeal from the final judgment of conviction for first-degree criminal sexual conduct, appellant Eh Doh Par argues that he should receive a new trial because he was deprived of his right to an impartial fact-finder at the hearing where the district court qualified a witness as an expert, and because the prosecutor failed to abide by the district court's order limiting that expert's testimony. Because we determine the district court acted impartially when certifying the witness as an expert, and the prosecutor did not violate the district court's order, we affirm.

## FACTS

In 2019, P.B.W.'s school made a referral for a diagnostic assessment for services after the school noticed a change in P.B.W.'s behavior and she made statements of wanting to harm herself. P.B.W. was ten years old at the time. During the assessment, P.B.W. indicated that a relative, Par, had sexually abused her on multiple occasions over the past several months, the most recent being within the past month.

A detective interviewed P.B.W. at her school and later at the police station. During the interview, P.B.W. confirmed that Par began sexually abusing her when she was nine years old and that the abuse had occurred five or six times. Police arrested Par, and respondent State of Minnesota charged him with multiple counts of criminal sexual conduct.

*Expert Witness Certification*

At a pre-trial motion hearing, the state moved to admit the detective who interviewed P.B.W. as an expert witness. Par objected.

Before the district court received testimony from the detective at the motion hearing, the follow exchange occurred:

> THE COURT: . . . I don't think I actually need to put this on the record because I think that [defense counsel] is well aware of it, but I've been CornerHouse trained and advanced CornerHouse trained as well. [Defense counsel], you're aware of that?
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: I don't believe I went to training with [the detective], however. I went to training with [the sheriff] back in the day. Is that correct, [detective]?
>
> THE WITNESS: Correct.
>
> THE COURT: And I don't think I've had much, if any, occasion to ever experience [detective]—as a prosecutor [detective]—
>
> THE WITNESS: Maybe once.
>
> THE COURT: Maybe once or twice, but that was really towards the end of my career. The last time I would have been in the county attorney's office would have been 2013 or '14, so it's been quite some time. Just so that any—any conflict is on the record if there is one.

Par did not object or raise any potential conflict. After the parties examined the detective, the district court conducted its own examination, which included the following exchange:

3

[THE COURT]: Detective . . . , different departments and different agencies tend to question in a different manner or different setting. I have some familiarity of how it was done when I was there, and you're talking about these interviews being conducted at the Law Enforcement Center; is that correct?

[THE WITNESS]: Correct.

After the conclusion of the detective's testimony, the district court certified the detective as an expert witness and provided guidance on the scope of the detective's testimony:

The limited list in Exhibit 3[1] that I have received with regard to the content of that testimony is acceptable. And certainly what his knowledge, skill, training, and experience[,] with respect to those issues are[,] are the subject of cross-examination. And the concerns that [defense counsel] brings forward with regard to nameless or faceless internet websites can certainly be addressed through the constitutional right of confrontation.

I, I think, would be remiss at this time not to caution, however, that this expert testimony is not to be vouching testimony. The limits of the expert testimony are to be able to say that in his knowledge, training, experience certain things are not uncommon to view or are common to view, or however he's testifying. But specifically relating it to this interview or this child and saying that this interview or this child exhibits those things is the prohibited piece of testimony that we are unable to draw the links for the jury. He can talk about what he observed, but linking that directly to "and that's a common characteristic of" I think is the kind of vouching testimony that we need to specifically avoid.

[1] The "list in Exhibit 3" is a reference to a written summary of the subjects of the detective's expert testimony.

4

*Expert Testimony*

At trial, the detective's expert testimony began with information about how children typically report abuse, the impact of trauma on a child's report and ability to recall details, and how children report multiple incidents. The detective then detailed P.B.W.'s report and interview, as well as his interview with Par. Par did not object at any point during the detective's testimony.

The jury found Par guilty on all counts. Par appeals.

## DECISION

### I. The district court judge did not not deny Par an impartial fact-finder.

This court reviews the constitutional question of whether a defendant is deprived of his right to an impartial fact-finder de novo. *State v. Hicks*, 837 N.W.2d 51, 59 (Minn. App. 2013), *aff'd*, 864 N.W.2d 153 (Minn. 2015). A district court judge is presumed to have set aside collateral knowledge and been neutral and objective in their disposition. *See State v. Burrell*, 743 N.W.2d 596, 603 (Minn. 2008).

"An impartial trial requires that conclusions reached by the trier of fact be based upon the facts in evidence, and prohibits the trier of fact from reaching conclusions based on evidence sought or obtained beyond that adduced in court." *State v. Dorsey*, 701 N.W.2d 238, 249-50 (Minn. 2005) (citations omitted). Judges may not "rely upon extra-record knowledge when sitting as the finder of fact." *Id.* at 251.

In determining whether a judge acted as an impartial fact-finder, "the question is whether an objective examination of the facts and circumstances would cause a reasonable examiner to question the judge's impartiality." *Hicks*, 837 N.W.2d at 59 (quotation

omitted).  The fact that a party declares a judge partial does not, in itself, generate a reasonable question as to the judge's impartiality.  *Burrell*, 743 N.W.2d at 601-02.

Par argues the district court judge's reference to her CornerHouse training deprived him of an impartial fact-finder.  Par asserts that the judge's "repeated references" to this training indicated that the district court judge relied upon that training when certifying the detective as an expert.  We disagree.  The district court judge's reference to her training and potential previous work with the detective did not indicate that the judge relied on that information when certifying the detective as an expert.  Instead, the district court judge addressed her CornerHouse training and potential past experience with the detective to disclose any potential conflict and provide the parties an opportunity to address any perceived conflict.  Par did not object or raise any issue of a conflict.

Par argues the district court primarily based the expert certification of the detective on the judge's prior CornerHouse training.  The record shows otherwise.  Both parties and the district court extensively examined the detective.  The district court also had ample other relevant information regarding the detective's extensive work experience. The record does not show that the district court judge relied on her extra-record knowledge in certifying the detective as an expert witness.

An objective review of these facts and circumstances would not cause a reasonable examiner to question the district court judge's impartiality.  *Hicks*, 837 N.W.2d at 59.  Par's declaration that the district court judge was partial does not in itself generate a reasonable question as to the judge's impartiality.  *Burrell*, 743 N.W.2d at 601-02.  Par has not

overcome the presumption that the district court judge set aside collateral knowledge and remained neutral and objective in her disposition. *Id.* at 603.

In the alternative, Par argues that even if there was no structural error, the district court judge's "reliance on general knowledge outside the record that arguably favors the State could make her impartiality be reasonably questioned." We are not persuaded.

Even if a judge's conduct does not satisfy the test for structural error, reversal may still be warranted under the *Powell* test if the impartiality of the judge may be reasonably questioned. *See State v. Lopez*, 988 N.W.2d 107, 121-22 (Minn. 2023) (citing *Powell v. Anderson*, 660 N.W.2d 107, 121 (Minn. 2003)). Under the *Powell* test, the court must consider the risk of injustice to the defendant, the risk of injustice to other defendants in similar circumstances, and how the district court's conduct impacts public confidence in the judicial system. *Id.*

Par has failed to establish that the district court judge's reference to her CornerHouse training presented a risk of injustice to Par, a risk of injustice to other defendants in similar circumstances, or a risk of impact on the public confidence in the judicial system. The record also contains sufficient information, beyond Par's concern with the mention of the judge's CornerHouse training, to certify the detective as an expert witness.

The district court's statements did not deprive Par of his right to an impartial fact-finder.

7

**II. The prosecutor did not exceed the scope of the district court's order regarding the expert's testimony.**

Par argues that the district court plainly erred in failing to stop the prosecutor's examination of the detective when, according to Par, the prosecutor committed misconduct by violating the district court's order limiting the scope of the detective's testimony and by soliciting vouching testimony. Par did not object during the testimony challenged on appeal.

When the defendant fails to object during trial, we review claims of prosecutorial misconduct under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). The defendant bears the burden of establishing error that is plain. *Id.* "An error is plain if it is clear or obvious, which is typically established if the error contravenes case law, a rule, or a standard of conduct." *State v. Webster*, 894 N.W.2d 782, 787 (Minn. 2017) (quotation omitted). If the defendant meets this burden, the burden then shifts to the state to prove there is no reasonable likelihood that the absence of the misconduct would have had a significant effect on the jury's verdict. *Ramey*, 721 N.W.2d at 302. We may affirm if any of the plain-error prongs are not satisfied without considering the other prongs. *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012).

A. *The prosecutor did not exceed the scope of the district court's order limiting the detective's expert testimony.*

A prosecutor commits misconduct if their acts have the effect of materially undermining the fairness of a trial. *State v. Fields*, 730 N.W.2d 777, 782 (Minn. 2007). "[M]isconduct results from violations of clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law." *Id.*

Here, Par did not object to the detective's testimony at trial. On appeal, Par contends the prosecutor committed misconduct by eliciting testimony from the detective that went beyond the scope of the district court's order. This argument misconstrues the district court's order regarding the scope of the detective's testimony.

Par appears to suggest the district court limited the detective's testimony to only those subjects disclosed in his summary of expert testimony. But the district court merely approved the "limited list in Exhibit 3 that [it] received with regard to the content of that testimony." This approval did not represent a simultaneous order limiting the detective's testimony to only that content. Instead, the district court clarified with the prosecution that the testimony sought from the detective would be characteristics of victims of sexual abuse, specifically those behaviors, affects, and manners of reporting such as delayed or incremental reporting, and the affect of the victim in making the reports. This exchange demonstrates that the district court anticipated a wide range of testimony that was not limited to those areas specifically enumerated in Exhibit 3.

B.      *The prosecutor did not elicit vouching testimony from the detective.*

"Prosecutors may not elicit credibility-vouching testimony from trial witnesses." *State v. Robideau*, 783 N.W.2d 390, 400 (Minn. App. 2010), *rev'd on other grounds*, 796 N.W.2d 147 (Minn. 2011). Vouching occurs where one witness testifies for or against the credibility of another witness. *See State v. Vick*, 632 N.W.2d 676, 689 (Minn. 2001). However, an expert may opine about the common behaviors of child victims of sexual abuse without crossing the line into impermissible vouching. *Id.* at 689.

9

Par argues that the prosecutor exceeded the scope of the district court's order regarding the detective's testimony by eliciting vouching testimony meant to bolster P.B.W.'s testimony. We disagree.

Par argues the district court precluded testimony regarding common characteristics because that would present vouching testimony. Par misconstrues the district court's order. The district court's ruling, in fact, authorized the detective to testify regarding common characteristics so long as those characteristics were not related directly to P.B.W. The district court ruled:

> The limits of the expert testimony are to be able to say that in his knowledge, training, experience certain things are not uncommon to view or are common to view, or however he's testifying. But specifically relating it to this interview or this child and saying that this interview or this child exhibits those things is the prohibited piece of testimony that we are unable to draw the links for the jury.

The prosecutor's examination of the detective followed this limitation. The detective testified, consistent with the district court's order, to common characteristics he has seen through his knowledge, training, and experience regarding child abuse victims and how they report abuse. At no point did the detective relate common characteristics of child abuse or the reporting of such abuse to P.B.W.

The detective's testimony was also consistent with Minnesota caselaw that holds an expert witness may provide testimony regarding common behaviors of child victims of sexual abuse and that such testimony does not inherently cross the line into impermissible vouching. *See Vick*, 632 N.W.2d at 689; *State v. Myers*, 359 N.W.2d 604, 610-11 (Minn. 1984). Accordingly, the detective's testimony stayed within the limitations

10

imposed by the district court and the prosecutor did not violate the order by eliciting this testimony.

Par also suggests that the prosecutor committed misconduct by vouching for P.B.W. in closing arguments. This contention conflates vouching testimony from a witness with vouching during a closing argument. In closing arguments, a prosecutor may not "personally endorse the credibility of witnesses." *See State v. Leutschaft*, 759 N.W.2d 414, 425 (Minn. App. 2009). But the rule does not prohibit a prosecutor "from arguing that particular witnesses were or were not credible." *Id.* In reviewing the prosecutor's full closing argument, the record demonstrates the prosecutor did not impermissibly vouch for P.B.W., but instead, argued she was a credible witness.

**Affirmed.**