STATE OF MINNESOTA

IN SUPREME COURT

A25-1274

Ramsey County                                                        Thissen, J.


Andrew Vernard Glover,

        Appellant,

vs.                                                          Filed: April 1, 2026
                                                     Office of Appellate Courts
State of Minnesota,

        Respondent.

_____


Andrew Vernard Glover, Rush City, Minnesota, pro se.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Alexandra Meyer, Assistant Ramsey County Attorney, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

The district court did not abuse its discretion by summarily denying petitioner's postconviction petition alleging that the judge at his jury trial was not impartial.

Affirmed.

Considered and decided by the court without oral argument.

1

THISSEN, Justice.

The question before us in this appeal from the postconviction court's summary denial of appellant Andrew Vernard Glover's postconviction petition is whether the judge at his jury trial for first-degree murder was impartial. We conclude that the judge was impartial. Therefore, we affirm.

**FACTS**

We briefly summarize the facts underlying Glover's conviction, with a focus on the facts relevant to Glover's current appeal. A full recitation of the facts is set forth in Glover's direct appeal from the judgment of his conviction. *See State v. Glover*, 4 N.W.3d 124 (Minn. 2024).

On February 23, 2021, Saint Paul police responded to a shooting outside the Saint Paul Saloon. Responding officers found Raymond Renteria-Hobbs and another victim suffering gunshot wounds. Renteria-Hobbs later died at a nearby hospital. He had been shot ten times with 9-millimeter bullets. The second victim survived.

At the scene, officers reviewed the Saloon's security footage. The footage from just before the shooting showed Glover sitting outside the bar in a Dodge Journey sport utility vehicle and Renteria-Hobbs standing in the street near the vehicle's driver side. Shots were fired, the Dodge sped away, and Renteria-Hobbs stumbled across the street and collapsed in the Saloon's vestibule. Officers canvassed the area and found numerous spent 9-millimeter bullet casings in the street.

2

The subsequent investigation implicated Glover. Police impounded Glover's SUV and searched an apartment where he was staying. Glover's vehicle tested positive for gunshot residue, indicating that someone fired a gun while inside or near the SUV, or that someone had gunshot residue on them and then got into the vehicle. Inside Glover's apartment, police found a .380-caliber handgun and several rounds of 9-millimeter and .22-caliber ammunition atop a shelf in a bedroom closet. Glover was indicted on three counts of murder, two counts of drive-by shooting, and one count of being an ineligible person in possession of a firearm; he pled not guilty to all charges.

Before trial, Glover opposed the State's motion to introduce evidence of the .380-caliber handgun and the 9-millimeter ammunition found in his closet. The district court agreed with Glover and excluded the evidence.[1] During jury selection, however, Glover (then represented by different counsel) asked the court to revisit that ruling. Glover wanted to use the evidence of the ammunition found in his closet to counter the State's evidence that Glover's vehicle tested positive for gunshot residue. Glover intended to argue that the .380-caliber handgun found in the apartment search was not capable of firing the 9-

---

[1] This ruling arose from the State's motion in limine to introduce the firearm and ammunition as *Spreigl* evidence of Glover's prior bad act because, after law enforcement discovered the firearm and ammunition in his home—and prior to being charged in this case—Glover was separately charged with being an ineligible person in possession of a firearm. Glover opposed this motion. After applying the *Spreigl* test, the district court ruled in Glover's favor, prohibiting the State from introducing the firearm and ammunition evidence because his possession charge was "not sufficiently similar to the charged offense" of murder in this case and the evidence's prejudicial effect outweighed its probative value. *See State v. Spreigl*, 139 N.W.2d 167, 169 (Minn. 1965) (observing that evidence of other crimes is generally inadmissible except to establish motive, absence of mistake, identity, or common scheme or plan).

millimeter rounds that killed Renteria-Hobbs and that Glover had transferred the gunshot residue to his vehicle when he fired the .380-caliber handgun on an occasion unrelated to Renteria-Hobbs' murder.

The parties had the following discussion with the district court on the record:

DEFENSE COUNSEL: I'm going to be asking the Court to revisit a motion that suppressed the .380 that was found at [Glover's] home. And I'm going to ask the Court to allow that to be back into evidence.

. . .

DISTRICT COURT: Let's address the .380 firearm. . . . This is sort of an unusual situation, because I've ruled it inadmissible . . . . [A]nd I believe that ruling also encompassed ammunition that was located in the same closet . . . . [H]ave the parties reached an agreement?

. . .

STATE: The State is agreeing . . . that the firearm and ammunition that was found in the defendant's . . . apartment . . . is admissible as evidence.

. . .

DEFENSE COUNSEL: I'd ask the Court to, essentially, reverse its previous order and allow me to introduce evidence . . . that this particular firearm was found at the defendant's home.

DISTRICT COURT: Okay. And not to belabor the point, but Spreigl is . . . intended to protect the defendant. . . . And I just wanted to be clear if the limits were just the firearm. But it sounds like it's the ammunition as well that you're intending to question on; is that right?

DEFENSE COUNSEL: Right.

Though the State did not object to admission of the .380-caliber handgun, it raised the question of whether Glover needed to consent to admitting the handgun as part of his trial strategy on the record before admission. The charges against Glover included

4

unlawful possession of the .380-caliber handgun. The State argued that if Glover acknowledged that he possessed the gun in his murder trial it could be interpreted as an admission of guilt on the possession charge. Because of this possible inference, the State asserted that Glover needed to personally consent to admitting the gun into evidence on the record; Glover's attorney disagreed.[2] The district court declined to rule from the bench on this issue and stated, "we should all research . . . the question . . . and make sure we're clear on it."

The next day, the district court and the parties returned to the issue of Glover's consent to admit the firearm. The district court informed the parties that he "did some research yesterday," provided a brief discussion of the relevant case law, and stated that getting Glover's consent on the record was the safest course to avoid a potential ineffective assistance of counsel claim. Glover then consented to admitting the gun into evidence on the record.

Before Glover's trial began, the State told the district court that it was concerned about media coverage and suggested it may move to sequester the jury during its deliberations. Prior to jury deliberations, the district court asked if the State still intended to make the sequestration motion. It noted that potential jurors were not asked about sequestration during voir dire and expressed concern that sequestration might render some jurors unavailable for deliberations. The district court stated:

---

[2]    The district court and the attorneys also discussed potential implications for charges then pending against Glover in a separate case. The court considered these implications, but they are not relevant to resolution of this case and we do not address them here.

I think it is . . . my discretion when it comes to sequestration. [Minnesota Rule of Criminal Procedure 26.03] identifies . . . the issues that motivate a sequestration in terms of notoriety of the case or the possibility of external influences.

I, despite the seriousness of this case, have not seen much media coverage. And so that's one of the issues that I wanted to just raise and make sure I'm not missing something so that I can do, you know, sort of, independent research before we have a full argument on the case.

Following this statement, the State did not request sequestration of the jury and the district court did not order it.

The jury acquitted Glover of first-degree premeditated murder, Minn. Stat. § 609.185(a)(1), but found him guilty of first-degree intentional murder while committing a drive-by shooting, Minn. Stat. § 609.185(a)(3); felony drive-by shooting, Minn. Stat. § 609.66, subd. 1e(b) (2020);[3] and being an ineligible person in possession of a firearm, Minn. Stat. § 624.713, subd. 2(b). The district court convicted Glover on those counts and imposed a sentence of life with the possibility of release after 30 years for the first-degree murder conviction, a 60-month concurrent sentence for the ineligible person in possession of a firearm conviction, and a consecutive 48-month sentence for the felony drive-by shooting conviction. *Glover*, 4 N.W.3d at 132.

Glover appealed directly to us. *See* Minn. R. Crim. P. 29.02, subds. 1(a) (stating that "[a] defendant may appeal as of right from the district court to the Supreme Court from a final judgment of conviction of first-degree murder"), 1(d) (stating that "[o]ther charges that were joined for prosecution with the first-degree murder charge may be included in

---

[3]     In 2021, the Legislature amended this statute. The offense of felony drive-by shooting is now located at Minn. Stat. § 609.66, subd. 1e(a).

the appeal"). He argued that the district court (1) erred in concluding that police had probable cause to arrest him, (2) erred in finding that the police did not misrepresent material information on a search warrant application, (3) abused its discretion by denying his request to admit reverse-*Spreigl* evidence against an alleged alternative perpetrator, and (4) abused its discretion and violated his confrontation rights by denying his request to cross-examine the lead investigator about the investigation's scope. *Glover*, 4 N.W.3d at 129. We affirmed his convictions. *Id.* at 138.

Glover timely filed the postconviction petition before us in this appeal. His petition alleged that the district court deprived him of his constitutional right to an impartial judge by "tipping off the prosecution about an avenue for obtaining discovery" and by "conducting his own independent investigation of a disputed fact in Glover's trial." Glover's petition provided no record cites, did not clearly articulate how the district court "tipped" off the prosecution, and failed to specify the facts the court supposedly investigated.

The postconviction court issued an order summarily denying Glover's petition without an evidentiary hearing. In its order, the court evaluated Glover's claims based on the vague assertions in the petition and found them meritless. It also found that Glover's claims were procedurally barred under our decision in *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976), because the claims arose at trial and Glover failed to raise them in his direct appeal.

This appeal followed.

## ANALYSIS

This case comes to us following the postconviction court's summary denial of Glover's postconviction petition without an evidentiary hearing. We construe claims brought by self-represented postconviction petitioners "liberally and with an understanding eye." *Andersen v. State*, 940 N.W.2d 172, 181 (Minn. 2020).

In determining whether a petitioner is entitled to an evidentiary hearing, a postconviction court accepts "the facts alleged in the petition as true and construes them in the light most favorable to the petitioner." *Brown v. State*, 895 N.W.2d 612, 618 (Minn. 2017). A petitioner bears the burden to show facts entitling them to relief and, to meet that burden, "must do more than offer conclusory, argumentative assertions, without factual support." *State v. Turnage*, 729 N.W.2d 593, 599 (Minn. 2007). A postconviction court may summarily deny a petition without holding an evidentiary hearing when "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1. We review decisions summarily denying postconviction petitions without an evidentiary hearing for abuse of discretion. *Munt v. State*, 984 N.W.2d 242, 249 (Minn. 2023).

In his petition and before us on appeal, Glover argues that he is entitled to a new trial because the judge who presided over his trial was not impartial. Glover identifies two circumstances which he alleges show that the judge was not impartial. First, Glover claims that the judge engaged in advocacy for the State when he "initiated" or "tipped off" the prosecution to an issue related to Glover's request to admit a .380-caliber handgun and 9-millimeter ammunition at trial. Second, Glover asserts that the judge improperly conducted

8

independent research on whether Glover had to consent to admission of the .380-caliber handgun into evidence and on a question related to jury sequestration.

Whether a defendant was denied the right to an impartial judge is a legal question. *State v. Duol*, 25 N.W.2d 135, 141 (Minn. 2025). While "[w]e review a district court's denial of a postconviction petition for an abuse of discretion, . . . we review any embedded issues of law de novo." *Petersen v. State*, 937 N.W.2d 136, 139 (Minn. 2019). Because the postconviction court summarily denied the petition, on review, we, like the postconviction court, accept the allegations in the petition as true and we review the legal question of whether Glover was denied the right to an impartial judge at trial de novo.

A.

A defendant has a constitutional right to a trial before "a fair and impartial judge." *Duol*, 25 N.W.3d at 141 (internal quotation marks omitted) (quoting *Cuypers v. State*, 711 N.W.2d 100, 104 (Minn. 2006)) (explaining that the constitutional right derives from the right to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 7, of the Minnesota Constitution). In addition, Minnesota Rule of Criminal Procedure 26.03, subdivision 14(3), provides that "[a] judge may not preside over any criminal proceeding if [they are] disqualified from doing so under the Code of Judicial Conduct."[4] *State v. Mouelle*, 922 N.W.2d 706, 712–13 (Minn. 2019). Under the Code,

---

[4] At trial, Glover made no claim that the district court judge was partial or biased. Thus, the chief judge never considered or ruled on the question of the district court's partiality. *See* Minn. R. Crim. P. 26.03, subd. 14(3) (requiring that "[a] request to disqualify a judge for cause must be heard and determined by the chief judge of the district"). Glover also failed to raise the issue of the district court's impartiality on direct appeal.

judges must disqualify themselves from "any proceeding in which the judge's impartiality might reasonably be questioned." Minn. R. Jud. Conduct 2.11. Judges are impartial when they do not show "bias or prejudice in favor of, or against, particular parties or classes of parties" and "maint[ain] an open mind in considering issues" that come before them. *State v. Pratt*, 813 N.W.2d 868, 876 (Minn. 2012) (internal quotation marks omitted) (quoting Terminology, Minn. R. Jud. Conduct). We assess partiality from the perspective of an objective, unbiased layperson, with full knowledge of the facts and circumstances. *Id.* at 876 n.8.[5] The party challenging a judge's impartiality bears the burden of showing the judge was partial. *See State v. Burrell*, 743 N.W.2d 596, 603 (Minn. 2008) (concluding State failed to meet its burden to show judge was partial); *State v. Lopez*, 988 N.W.2d 107, 117 (Minn. 2023) ("The challenging party has the burden of proving actual bias.").

---

Based on our resolution of the case, we do not reach the issue of whether Glover's timely postconviction petition is barred by *Knaffla*, 243 N.W.2d at 741, or by Minn. Stat. § 590.01, subd. 1. We have yet to decide whether the *Knaffla* rule or its common-law exceptions survived amendments to the postconviction review statute that were made in 2005. *Heard v. State*, 22 N.W.3d 154, 167 n.8 (Minn. 2025).

[5] The United States Supreme Court has observed that "most matters relating to judicial disqualification [do] not rise to a constitutional level," which requires a showing that "under a realistic appraisal of psychological tendencies and human weakness," the interest at issue "poses such a risk of actual bias or prejudgment" that due process requires recusal. *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876, 883–84 (2009) (alteration in original) (citations omitted) (internal quotation marks omitted). We do not address the precise outer contours of the constitutional due process right to an impartial judge because Glover failed to demonstrate the trial judge was partial under the broader Code of Judicial Conduct standard: that an objective, unbiased layperson, with full knowledge of the facts and circumstances, might question the district court's impartiality in this case. *See* Minn. R. Jud. Conduct 2.11.

Over the years, we have identified several situations where judges, through words and conduct, deprived defendants of fair trials by failing to maintain judicial impartiality. Two are relevant to Glover's claims.

First, we have determined judges are partial when they act as advocates or counsel by suggesting new arguments to one party. For instance, in *State v. Schlienz*, 774 N.W.2d 361 (Minn. 2009), we held that a judge denied the defendant's right to a fair hearing before an impartial decision-maker by communicating ex parte with the prosecutor and suggesting substantive responses to the defendant's anticipated plea withdrawal motion. *Id.* at 367–69; *see also State v. Malone*, 963 N.W.2d 453, 466 (Minn. 2021) (concluding judge was not impartial where judge (among other things) suggested to prosecutor a new strategy to prove defendant knowingly violated an order for protection and identified a witness to call); *State v. Dorsey*, 701 N.W.2d 238, 251 (Minn. 2005) (concluding judge was not impartial where judge (among other things) introduced facts adverse to the defendant that the State had not introduced into the case). In so ruling, we distinguished several other circumstances that may not cross the line into partiality. For instance, we stated that "a judge expressing an opinion about the merits of an ongoing dispute with both parties present," where the judge "d[oes] not introduce new arguments into the proceeding," is clearly not acting as an advocate for one party. *Schlienz*, 774 N.W.2d at 369 (discussing *Burrell*, 743 N.W.2d at 602). We also distinguished circumstances where a judge "question[s] counsel during proceedings in order to clarify facts and aid in his decision making." *Id.* We are particularly concerned when a judge acts as advocate on an essential element of a crime. *Malone*, 963 N.W.2d at 466.

11

Second, in several cases we have determined that a judge is partial when they independently seek out facts that neither party introduces. *See, e.g.*, *id.* (determining that a judge was disqualified for having independently investigated a fact not in evidence, notifying the parties of that fact, relying on the fact in denying a motion to dismiss, and suggesting a specific witness the State might want to call and facilitating contact with that witness); *Duol*, 25 N.W.3d at 143 (concluding that a judge was not impartial when he intentionally conducted an independent investigation and considered facts outside the record in denying a petition for postconviction relief); *Dorsey*, 701 N.W.2d at 251 (concluding judge was not impartial in questioning, and subsequently independently investigating, the truth of a defense witness's testimony). In those cases, "the very act of seeking information outside the record effectively transform[ed] the court into an investigator . . . thereby eliminating any vestige of impartiality." *Duol*, 25 N.W.3d at 143 (citation omitted) (internal quotation marks omitted) (emphasis removed). We have applied this rule to fact-finding when a judge presides over a bench trial, a postconviction petition, and pretrial issues. *See Malone*, 963 N.W.2d at 466–67 (stating that the prohibition on investigation is not limited to bench trials).

B.

With this background in mind, we turn to the district court judge's actions that Glover argues demonstrate that the court failed to remain impartial. First, Glover asserts that the district court judge engaged in advocacy for the State after his attorney requested that the court "revisit [the] motion that suppressed the .380 that was found at [Glover's] home." In response, the court replied that the request was "unusual" because it had

12

previously ruled the .380-caliber handgun inadmissible and the ruling "encompassed ammunition that was located in the same closet." Glover contends that by mentioning the ammunition, the district court advocated or "tipped" off the prosecutor and that the tip led to the admission of damaging evidence. Glover urges that, because the murder weapon was never found and the evidence showed that Renteria-Hobbs was shot with 9-millimeter bullets, the 9-millimeter ammunition found in Glover's closet and the gunshot residue found in his vehicle were significant firearm-related evidence that linked Glover to the murder. Glover thus asserts that the district court judge improperly inserted himself into the argument over whether that evidence should be admitted.

We disagree. It was reasonable for the district court judge to ask counsel about the ammunition. Glover's attorney requested that the court revisit the motion that excluded the .380-caliber handgun; the ammunition was excluded under the same motion and for similar reasons. The court did not act as an advocate for the State and did not inappropriately highlight or emphasize previously unknown or incriminating ammunition evidence for the State. The State was previously aware of the ammunition; it had, in fact, initially moved to admit that evidence. Glover opposed the State's original motion and succeeded in having both the firearm and the ammunition suppressed. Only because his new trial counsel pursued a new strategy and requested that the firearm be admitted did the district court revisit its ruling and reasonably readdress all related evidence on which it had previously ruled. The court sought clarification on a disputed issue, concerning facts already in the record, with both parties present to aid in its decision-making.

Further, the record shows that Glover himself sought to admit the .380-caliber handgun *and* the 9-millimeter ammunition:

> DISTRICT COURT: I just wanted to be clear if the limits were just the firearm. But it sounds like it's the ammunition as well that you're intending to question on; is that right?
>
> DEFENSE COUNSEL: Right.

Accordingly, Glover did not show that the district court's reference to the ammunition demonstrated that the court was partial, nor that an objective, unbiased layperson, with full knowledge of the facts and circumstances, might question the court's impartiality.

## C.

Glover also claims that the judge was partial because he conducted improper independent investigations when he (1) considered whether Glover had to consent to the trial strategy of admitting the .380-caliber handgun and the 9-millimeter ammunition on the record, and (2) inquired into a potential jury sequestration motion. Again, we disagree.

As to the question of the necessity of Glover's consent to trial strategy, Glover refers to the district court judge's statement that he "did some research" into whether Glover needed to consent to his attorney's trial strategy before the .380-caliber handgun was admitted. Notably, the prosecutor—not the district court judge—raised the issue, pointing out Glover's charge for illegal possession of a firearm. The record shows that the court's research was legal rather than factual. After stating that he had conducted the research, the judge described the results and relevant case law.

Glover's second claim of improper investigation arises from a discussion between the district court and the parties about the potential for jury sequestration. The State had

previously suggested that sequestration might be a possibility. During that discussion, the district court noted that jury sequestration was within a judge's discretion, under Minnesota Rule of Criminal Procedure 26.03, and that because he had not observed much media coverage over the course of the trial, he intended to conduct "independent research" before having a full argument on the issue.

In context, the district court was referring to legal research. The judge observed that there had been a relative lack of media coverage about the case and stated his intent to conduct legal research on the amount of media coverage justifying sequestration under Rule 26.03. *See* Minn. R. Crim. P. 26.03, subd. 5(2) (providing that "[s]equestration must be ordered if the case is of such notoriety or the issues are of such a nature that, in the absence of sequestration, highly prejudicial matters are likely to come to the jurors' attention"). As it turned out, neither party requested that the jury be sequestered.

We have never held that a district court's legal research on issues the parties present creates a specter of impartiality. Indeed, judges must make sure they understand the law before deciding issues the parties raise—which may require legal research. Conducting legal research on issues and arguments the parties raise before making decisions does not render a judge partial. The district court judge's legal research on issues the State and Glover raised at trial does not establish that the district court was actually biased, nor that an objective, unbiased layperson, with full knowledge of the facts and circumstances, might question the court's impartiality in this case.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

Affirmed.